### MURRAY CO. v. DOBBS et al.

### No. 3931.

Court of Civil Appeals of Texas. Amarillo.

Jan. 4, 1933.

W. P. Donalson, of Dallas, for appellant.

Carl Rountree, of Lamesa, for appellees.

JACKSON, J.

The appellees, M. C. Dobbs and W. W. Womack, instituted this suit in the district court of Dawson county against appellant, the Murray Company, to recover a commission for procuring the sale of a certain gin plant and certain machinery against which the appellant had and held a valid mortgage lien to secure an indebtedness due appellant by R. E. Coleman, the owner of said plant and machinery.

Appellees alleged that the appellant has its principal office and place of business at Dallas, Tex., and is engaged in the manufacture of cotton gin plants and cotton gin machinery which it sells to customers and on which it frequently retains a lien to secure a part of the purchase price. That appellant sold the property involved to R. E. Coleman, and retained chattel mortgage liens thereon to secure a balance of approximately $24,151.61 of the purchase price, which balance was evidenced by notes given by R. E. Coleman to the appellant.

That on April 15, 1930, some of said notes were past due, and the maker was and had been for some years unable to satisfy either the principal or interest thereon, and had wholly defaulted in his payments. That about said date A. T. Biggers, the appellant's agent who represented it in collecting, adjusting, and extending its notes and liens and with apparent authority to so contract, promised and agreed with appellees that if they would effect a sale of said plant and machinery satisfactory to the interested parties, appellant would pay them the sum of $1,000 for such services. That thereafter, relying on such agreement, appellees effected and were the procuring cause of the sale of the property to the Farmers' Co-operative Society No. 1 of George West, Tex., of which society D. M. Currie was manager. That the sale was evidenced by a written contract of date June 12, 1930, executed by R. E. Coleman, said Farmers' Co-operative Society, through its manager D. M. Currie, and signed

and approved by appellant and was accepted and consummated satisfactory to all the parties.

The appellees alleged the terms of the sales contract, the consideration passing to appellant; that the agreement for commission and the sales contract were made in Dawson county and that the property was located at Shumake, in said county, and their cause of action arose in whole or in part therein.

Appellees, in the alternative, say that if they are not entitled to recover on the contract, that they were the procuring cause of the sale; that the consideration therefor was $18,500; that the reasonable commission for a sale of such property is 5 per cent.; and asked that they be allowed compensation on a quantum meruit.

The appellant filed a plea of privilege and sought to have the case transferred to Dallas county, where it had its domicile and maintained its place of business. It alleged that it had no authority to sell the property, as its only interest therein was represented by its debt and liens; that an agreement to pay commission thereon would have been ultra vires. It stated that it had no agent residing in Dawson county, and denied the authority of A. T. Biggers or any other person to bind it to pay appellees a commission, and denied ratification of any such agreement if it had been made.

The appellees filed a controverting affidavit making the allegations of their petition a part thereof, pleaded the contents and effect of certain letters received from appellant's sales manager, and asserted that appellant, through its authorized agents and officers, had acquiesced in and ratified the sales contract and the commission agreement, had accepted the benefits of appellees' services, and were estopped to deny liability therefor.

After a hearing the court overruled the plea of privilege, from which action this appeal is prosecuted.

The testimony, considered in its most favorable light for appellees, discloses that appellant was a private corporation with its principal place of business in Dallas, Tex., engaged in the manufacture and sale of gin plants and gin machinery. That it frequently retained a lien to secure a balance on the purchase price of the machinery sold. That the property involved in this controversy was sold by appellant to R. E. Coleman and erected at Shumake in Dawson county. That appellant retained a lien against said property to secure the payment of a balance of approximately $20,000 evidenced by notes, some of which were due and unpaid, and appellant was apprehensive of the financial ability of the owner. That A. T. Biggers, who was the traveling collector of appellant, informed the appellees that Mr. Coleman had defaulted in his payments and promised them if they would effect a sale satisfactory to the owner and the lienholder, that appellant would pay them the sum of $1,000.00 for their services. That this agreement was made in Dawson county. That appellees were the procuring cause of the sale of the property involved, to the Farmers' Co-operative Society at George West; that a contract between Coleman and D. M. Currie, the manager of said society, was entered into, subject to the approval of appellant. That R. E. Coleman, M. C. Dobbs, and D. M. Currie went to Dallas and the contract of sale was there approved in the office of appellant, and afterwards consummated. That on May 1st, M. C. Dobbs wrote the appellant, stating: "Your letter in regard to my trip to South Texas received. The place is George West, Texas, manager D. M. Currie. I spoke to them in regard to your machinery."

That on May 7th, C. M. Nevitt, the sales manager of appellant, wrote M. C. Dobbs, thanking him for his letter of May 1st, and stating: "We would be glad to have you work with us on this proposition and will cheerfully compensate you for such assistance * * * in the event we secure the business."

That the credit and collection department of appellant was in charge of C. W. Cowan, by whom A. T. Biggers was employed, and from whom he received his instructions. That at the time the sale of the machinery was approved by appellant in Dallas, Mr. Dobbs, at the request of Mr. Coleman, discussed the deal with Mr. Cowan, advising him of the organization of the Co-operative Society at George West, the financial responsibility of the members, and their ability to take care of the obligation they were assuming in the purchase of the property involved; and Mr. McDonough, the assistant sales manager of the company, promised Mr. Dobbs that the appellant would compensate appellees for their services in the sale of this property.

The mortgage liens retained by appellant provided that the property involved should remain in Dawson county, and the removal thereof without the written consent of appellant would mature all of said notes and authorize the holder thereof to take possession of the property, and authorized the appellant to sell the property in the event the owner defaulted in the payment of the notes as they matured.

That appellant maintained a collection department and a sales department. That A. T. Biggers was a traveling collector and without authority to bind appellant in the agreement to pay appellees for their services.

The correspondence discloses that the sales manager had acquired some information relative to appellees' services, and promised that

his company would compensate appellees if their services eventuated in the sale of the property about which the correspondence was had. This correspondence, together with the testimony, indicates that the property involved in this controversy was the machinery referred to in the letters.

Appellee M. C. Dobbs was promised compensation for the services of appellees by the assistant sales manager at appellant's office in Dallas at the time the head of the credit and collection department was advised by said Dobbs, at the request of the owner of the property, of the financial responsibility of the purchasers, the sales contract approved, and the services of appellees accepted.

■ An agent cannot ratify his own unauthorized act, nor is his knowledge imputable to appellant.

"An agent cannot ratify his own unauthorized act; * * *. but where the act which when done by one agent was unauthorized, is within the general power of another agent of the same principal, the doing of the act by the first agent may be ratified by the second." 1 Mechem on Agency (2d Ed.) page 274.

"An agent who has the power to appoint a subagent and give him authority may ratify his act (if within the agent's authority) and thereby make it binding on the agent's principal." Id. 275.

"All the authorities agree that a principal cannot be said to have ratified a transaction, unless it is shown that he has had knowledge of the terms on which it was arranged. This applies to a corporation as well as to an individual principal; the corporation cannot be said to have adopted acts of which it is ignorant. However, where there is knowledge that the transaction has been entered into, this carries with it knowledge of all the usual conditions of such a transaction. The corporation may not thereafter say that it had no knowledge of the usual terms; on the other hand it is not charged with knowledge of special conditions not necessarily incident to a transaction of the kind." 10 Tex. Jur. 986.

■ Ratification has the effect of prior authority and generally renders a contract binding on the corporation as to all its terms from its inception. 10 Tex. Jur. 984.

■ The rule is well settled that a corporation is charged with the knowledge of its agent, acting within the scope of his authority. This rule is based on the duty of such agent to communicate his knowledge to his principal.

■ The record discloses that the sales manager of appellant had information to the effect that appellees were engaged in an effort to effect the sale of the property involved, and indicates that the head of the credit and collection department had information that the services had been rendered, and notice to either of them relative to such services is imputable to appellant.

■ In Peach River Lumber Company v. Ayers, 41 Tex. Civ. App. 334, 91 S. W. 387, 388, writ of error denied, J. K. Ayers sued said lumber company in the district court of Harris county for services as a broker in connection with the purchase by said company of certain timber in Montgomery county. After holding that the company's agent who employed Ayers was without authority to bind the lumber company to pay him compensation for his services, but that such employment was afterwards ratified and the services accepted, the court says: "Ayers lived in Harris county, the contract was made there, and was by Ayers actually performed there. It must have been in the contemplation of Vidor that Ayers' part of the contract would be performed in Harris county. Appellant, if liable at all, is liable upon the implied contract for compensation arising from the employment of appellee by Vidor, and its ratification and adoption by the authorized officer of the company. This ratification relates back to the beginning of the transaction binding appellant as though Vidor had been fully authorized, by force of the legal maxim: 'Omnis ratihabitio retrotrahitur et mandato equiparatur.' "

This decision is authority for holding that appellee's cause of action, or a part thereof, arose in Dawson county, and that venue was properly laid therein.

■ Appellant's contention that it was without authority to contract to pay or ratify a contract for paying a commission and that such a contract was ultra vires, is not tenable. Rogers-Hill & Company v. San Antonio Hotel Co. (Tex. Com. App.) 23 S.W. (2d) 329.

The judgment of the trial court is affirmed.