Dr. R. L. YELDERMAN et ux., Appellants,

v.

Glenn H. McCARTHY et al., Appellees.

No. 15825.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Dec. 2, 1971.

Rehearing Denied Jan. 6, 1972.

Helm, Jones & Pletcher, Richard P. Hogan, Thomas Brennan, Houston, for appellants.

Peareson, Scherer, Roberts & Slone, Charles R. Slone, Richmond, for appellees.

COLEMAN, Justice.

This is a suit to recover royalties alleged to be due under the terms of an oil and gas lease and to recover damages to the surface estate caused by the operation of

the leasehold owner. The case was tried to the court without a jury, and resulted in a judgment that the plaintiffs take nothing.

The principal issue involved is the validity of a gas unit created under the authority of the unitization provision contained in an oil and gas lease dated September 20, 1965, whereby Dr. Yelderman and his wife leased their ¾ mineral interest in a 225.24 acre tract of land out of the H. & T. C. Railway Company Survey, Section 12, Fort Bend County, Texas, to O. J. Marten. By assignment the working interest in this lease was acquired by appellees. On June 28, 1967, the #1 Yelderman well was completed for gas production at the 7720′ Cockfield horizon and at the 8150′ Cockfield horizon. Appellees made application to the Railroad Commission for temporary rules for the field and commenced delivery of gas from the well to a pipeline.

On August 21, 1967, appellees filed for record a unit declaration embracing 346.82 acres of land, which included 117.03 acres out of the Yelderman lease. The Railroad Commission issued a temporary order on October 3, 1967, establishing 640 acres as a minimum tract on which a gas well might be drilled in the 7720′ Cockfield Sand and the 8150′ Cockfield Sand. This order was amended on November 21, 1968, when a permanent order was issued eliminating the 7720′ Cockfield Sand, from which production had ceased, and establishing 320 acres as a drilling and proration unit for the Rosenberg (8150′ Cockfield) Field. A tolerance acreage of 10% was allowed each gas proration unit permitting a unit of 352 acres.

This suit was filed on July 23, 1968, after the temporary order was issued and while it remained in effect. On December 11, 1968, appellees filed a correction unit declaration of the Yelderman 346.82 acre Gas Unit.

Sec. 4 of the Yelderman lease authorized in broad terms the pooling of the land covered by the lease with other lands in the immediate vicinity thereof, "when in Les-

see's judgment it is necessary or advisable to do so in order properly to explore, or to develop and operate said leased premises in compliance with the rules or regulations of the Railroad Commission of Texas." It provided that the unit should not exceed 640 acres, plus a tolerance of 10% thereof, for gas unless larger units should be prescribed or permitted by the governmental authority having jurisdiction, in which event the units could be created or enlarged to conform in size "to the drilling or spacing units so prescribed or permitted or to the proration units as may be authorized for obtaining the maximum allowable production from one well." It provided that the unit declaration should be filed for record in Fort Bend County, and that "upon such recordation the unit shall be effective as to all parties hereto" whether or not it became effective as to the owners of other lands included in the unit.

Section 13 of the lease, a typed paragraph inserted into the printed lease, reads:

"Notwithstanding anything contained herein to the contrary the lessee in pooling said lands shall be limited in authority in creating any unit into a pooled area that will exceed in acreage the minimum size tract on which a well may be drilled in order to conform to the spacing pattern prescribed in the field by regulatory agencies having jurisdiction thereof for any purpose."

It will be recognized that by the clear terms of the lease the authority to pool was limited. The acreage of the pooled area could not exceed the minimum size tract on which a well could be drilled at the time the unit was formed. When the McCarthy-Yelderman Gas Unit Declaration was executed by the lessee, filed for record, and recorded, the minimum size tract on which a well could be drilled was 40 acres as prescribed by Statewide Rule 37 of the Texas Railroad Commission, although wells could be drilled on smaller tracts under special permits granted as ex-

ceptions to the rule. The McCarthy-Yelderman et al 346.82 acre gas unit did not become effective when it was recorded because the lessee lacked the authority to include lessors' land in a 346.82 acre pool until the special rule for the Rosenberg (8150' Cockfield) Field was adopted. The rule as finally adopted provided for a drilling unit having a minimum size of 320 acres, although it allowed a gas proration unit of the maximum size of 352 acres. The unit declaration purported to unitize all of the gas and gas rights in the 346.82 acre gas unit. The unit declaration made by appellees was not authorized by the Yelderman lease and was ineffective to accomplish the pooling of acreage described in that lease at the time it was filed for record. Jones v. Killingsworth, 403 S.W.2d 325 (Tex. 1965).

On December 6, 1967, appellees mailed to the royalty owners, including appellants, a division order which set out the fractional interest owned by each royalty owner in a Yelderman gas unit of 666.82 acres which does not appear to have been recorded. It does not appear that this division order was signed. On January 3, 1968, the attorney for appellees wrote appellants demanding payment of accrued royalties on the basis of ¾ of ⅛ of total production from the Yelderman Lease, and making certain other demands. By letter dated January 10, 1968, appellees rejected these demands.

Thereafter a series of checks drawn on the Glenn H. McCarthy Royalty Account payable to Dr. R. L. Yelderman and wife, Marjorie Yelderman, were sent to the Yeldermans. On the first check in the sum of $4,009.08, and dated 6/6/68, above the endorsements of Mr. and Mr. Yelderman appears the following notation:

"This check covers undersigned royalty owners .0326258 interest in the gas & distillate runs for the months of July, 1967 through April, 1968 from the McCarthy-Yelderman et al 346.82 Gas Unit, Rosenberg Field, Ft. Bend County, Texas, as described in Unit Declaration dated June 28, 1967 and recorded in Vol. 490, page 809, Deed Records of Fort Bend County, Texas, and the undersigned agrees that the interest shown above is true and correct. Accepted as partial payment only as per lease agreement."

The evidence establishes that the last sentence was added by the Yeldermans prior to endorsing the check. This check appears to have been cashed on November 15, 1968. Prior to that date a check dated 6–26–68 drawn on the same account and payable to Dr. and Mrs. Yelderman, bearing no notation on the back, was cashed on September 7, 1968. Three other such checks were cashed on the same date. Two other checks without the notation were cashed in October and November, 1968.

Thereafter checks on the royalty account, bearing a similar statement on the back, were endorsed and cashed by Dr. and Mrs. Yelderman each month to and including one dated 7–27–70. The check for November, 1968, is a fair example and reads:

"this check is in full and final settlement and constitutes payment in full for any and all of the undersigned owners' interest in the gas and distillate runs for the month of *September, 1968,* from McCarthy-Yelderman, et al 346.92 acre gas unit Rosenberg Field, Fort Bend County, Texas, as described in Unit Declaration dated June 28, 1967, and recorded in Vol. 490, page 809, Deed Records of Fort Bend County, Texas, and the undersigned agree that their interest shown on the accompanying accounting statement (0326258) in the above described gas unit is correct and constitutes their full and complete interest in the above described gas unit."

The lessors added the notation: "accepted as partial payment only as per lease agreement." The check for the royalty for August, 1969 bore the same statement on the back without the addition that it was accepted as partial payment, or according to the terms of the lease agreement only,

which, as has been noted, was added to the statement on other checks.

In Leopard v. Stanolind Oil & Gas Co., 220 S.W.2d 259 (Tex.Civ.App.—Dallas 1949, ref., n. r. e.), the court stated: "The acceptance of the royalty checks by appellants with knowledge that they were in payment for royalty from the Holland Well and that the Holland Well and their land, together with other lands of third parties had been unitized by appellees, was a ratification of such unitization by appellees."

■ The authority granted the lessee by the Yelderman Lease to effect a unitization of the mineral interests included therein with other mineral interests in the immediate vicinity constituted him the agent of the lessors with limited authority to convey royalty interests in the Yelderman lease to the owners of such other mineral interests on the terms stated in the lease. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472 (1942); Texas & Pacific Coal & Oil Co. v. Kirtley, 288 S.W. 619 (Tex.Civ.App.—Eastland 1926, writ ref.).

■ A principal will be held to have ratified the unauthorized action of his agent in dealing with his property by any conduct affirming the action, including the acceptance of benefits flowing therefrom, if the principal has knowledge of the agent's action. Rainwater v. Mason, 283 S. W.2d 435 (Tex.Civ.App.—Amarillo 1955); Murchison v. Davis, 4 S.W.2d 1016 (Tex. Civ.App.—El Paso 1928); Humble Oil & Refining Co. v. Clark, 126 Tex. 262, 87 S. W.2d 471 (1935); Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619 (1935).

■ When appellants accepted the royalty checks tendered as payment of their specified interest in the gas unit, which was properly described, they ratified the action of appellees in unitizing the leases despite the fact that appellants informed appellees that they were applying the sum tendered as a partial payment of the royalty due them under the terms of the lease. They were authorized to accept the payment only in accordance with the terms under which it was sent. Stetson-Preston Co. v. H. S. Dodson & Co., 103 S.W. 685 (Tex.Civ.App.1907); Murchison v. Davis, supra; Leopard v. Stanolind Oil & Gas Co., supra.

■ Ratification has the effect of prior authority. The gas unit must be considered as effective from the date of its recordation. Texas Pacific Coal & Oil Co. v. Smith, 130 S.W.2d 425 (Tex.Civ.App.— Eastland 1939, dism'd judg. cor.); Murray Co. v. Dobbs, 56 S.W.2d 233 (Tex.Civ.App. —Amarillo 1933).

■ Appellants' contention that they are entitled to a judgment for the full royalty on all gas sold prior to the effective date of the gas unit cannot be sustained. A creditor who accepts and cashes a check tendered as full payment of a disputed claim cannot vary the legal effect of such acceptance as an accord and satisfaction by protesting that he is accepting the check as part payment only. Burgamy v. Davis, 313 S.W.2d 365 (Tex.Civ.App.—Fort Worth 1958); Industrial Life Ins. Co. v. Finley, 382 S.W.2d 100 (Tex.1964); Groves v. Sawyer, 384 S.W.2d 193 (Tex.Civ.App.— Eastland 1964, ref., n. r. e.). There is no contention that the checks tendered failed to correctly reflect the amount due calculated according to the owners' interests in the gas unit.

■ Appellants also asserted a cause of action for damages for the breach of certain covenants contained in the lease relating to the burial of pipelines and the restoration of the premises after completion of drilling operations. The judgment denying recovery for breach of these covenants is correct because there is no evidence that appellants sustained other than merely nominal damage.

Affirmed.