**MODULAR TECHNOLOGY CORPORATION, METAL BOARD DIVISION, Appellant,**

v.

**The CITY OF LUBBOCK, Appellee.**

**No. 8592.**

Court of Civil Appeals of Texas, Amarillo.

Oct. 20, 1975.

Rehearing Denied Nov. 17, 1975.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellant.

Fred O. Senter, Jr., City Atty., James P. Brewster, Lubbock, for appellee.

REYNOLDS, Justice.

Modular Technology Corporation, Metal Board Division, sought declaratory judgment that its contractual obligation to furnish "12,000 side loading refuse containers, + or − 25%" to the City of Lubbock was fulfilled when it had delivered 9,000 containers. The trial court, sitting sans jury and finding the contract to be ambiguous,

heard parol evidence and rendered judgment, supported by findings of fact and conclusions of law, sustaining the city's contention that the contract vested in the city the option to determine the number of containers it required within the limits of not less than 9,000 nor more than 15,000. We affirm.

In 1973, the City of Lubbock decided to convert to a fully mechanized trash pick-up system. Solicitation of bids led to a May 14, 1973 written contract with Modular, who agreed

> . . . to furnish and deliver to Lubbock, Texas and set in place, at locations specified by the Director of Public Works of the City of Lubbock, a total of 12,000 side loading refuse containers, + or − 25%.

Modular's deliveries of the refuse containers commenced in July, 1973, and terminated in October, 1974, when a total of 9,000 containers had been either set in place or stored at a city storage area. In the interim, Modular sent a July 19, 1974 letter to the city stating, "Modular . . . feels that we will have completed our contract obligation at nine thousand refuse containers." By letter dated September 16, 1974, the city requested Modular to furnish "15,000 refuse containers in accordance with the contract."

Over Modular's objection, the trial court conditionally admitted parol evidence bearing on the circumstances surrounding the making of the contract, the negotiations between the parties after the contract was executed, and the views of the parties with respect to the number of containers contemplated. The court found that the contract is ambiguous and that reference to extrinsic evidence is proper to determine the intention of the parties. The court then interpreted the contract

> . . . as having vested in the Defendant City of Lubbock, Texas, the option of determining the ultimate number of side loading refuse containers to be manufactured and delivered . . .

within the limits of not less than 9,000 nor more than 15,000 units.

Modular takes issue with the trial court's determination of contractual ambiguity and consideration of parol evidence to ascertain the intention of the parties respecting the number of refuse containers to be furnished under the contract. It is Modular's position that the phrase "12,000 + or − 25%," being the mathematical equivalent of "9,000 to 15,000," compels the legal conclusion that the instrument signed by the parties is a minimum-maximum contract that is only enforceable to the minimum amount specified. We do not agree.

Obviously, if the parties had intended a minimum-maximum contract for 9,000 to 15,000 containers, it would have been far simpler to so state rather than employing the phrase "12,000 side loading refuse containers, + or − 25%." Moreover, Modular's approach ignores the central figure of 12,000 used in the phrase the parties agreed upon to designate the number of containers.

■ The primary concern is to find and give effect to the true intention of the parties from the language used in the contract. However, neither the research of counsel nor ours has revealed an authoritative meaning of the quantity designated by a phrase similar to "12,000 + or − 25%." When the contract is tested by the relevant rules of construction, the lack of clarity of language leaves the contract ambiguous insofar as the quantity of containers that are to be furnished because it is genuinely uncertain which one of several meanings is proper. The expression could mean that the contract is (1) a minimum-maximum contract enforceable to the minimum with any quantity up to the maximum, according to the authority relied upon, (a) left to future negotiations, or (b) dependent upon the option of the party who must first act in performing the contract, or (c) conditioned upon the option of the party who first exercises it, or (d) at the option of the purchaser if the option is exercised in good faith and within the limits set by commer-

cial reasonableness; or (2) a requirements contract with the city having the sole option to determine the quantity within the minimum-maximum limits. The only thing that we may say with certainty after reading the language is that the contractual phrase used indicates precision in quantity was not intended by the parties, but that there would not be a variance of more than 3,000 above or below the definite quantity of 12,000.

Since the language is susceptible of more than one interpretation, it was the duty of the court to consider the circumstances existing when the contract was executed and the interpretation placed upon it by the parties themselves, not to vary the terms, but to ascertain the true intention of the parties as they expressed it in the language of the contract. *Lone Star Gas Co. v. X-Ray Gas Co.*, 139 Tex. 546, 164 S.W.2d 504 (1942). It is familiar law that where a contract is ambiguous in its terms, the construction given those terms by the parties before any controversy has arisen as to their meaning will, when reasonable, be adopted and enforced by the courts. *E. H. Perry & Co. v. Langbehn*, 113 Tex. 72, 252 S.W. 472 (1923).

Suffice it to note that the court's declaratory judgment that the city had the contractual option to determine the containers it required within the 9,000 to 15,000 range finds adequate support in the properly admitted testimony of Modular's officers. Paul O. Lee, Jr., president of Modular, confirmed that the "use of this (12,000) plus or minus twenty-five percent" phrase was due to an inability to foresee exactly what number of containers would be required, and he admitted that it was Modular's intention and hope in submitting its bid that the plus twenty-five percent ultimately would be determined by the city. Gene Zara, General Manager of Modular's Metal Board Division, appearing before the city council on 27 June 1974 to request the city to pay the increased cost of steel over its price at the date of the contract for 2,000 containers

above the 9,000 minimum, acknowledged that the contract would commit "for up to 15,000 . . . if the City does desire."

Modular alternatively argues that, if the contract is ambiguous, the court erred in failing to construe the contract against the city which drafted it because there are at least two reasonable constructions to be given the contract. The rule contended for becomes applicable when, from a consideration of the entire instrument, there is a reasonable doubt as to which of two constructions best accords with the intent of the parties, *Amory Manuf'g. Co. v. Gulf, C. & S. F. Ry. Co.*, 89 Tex. 419, 37 S.W. 856 (1896), but the rule has no application where, from a consideration of the instrument in the light of the attendant circumstances, the intent of the parties is clear and a resort to the rule will defeat that intent. *Colquitt v. Eureka Producing Co.*, 63 S.W.2d 1018 (Tex.Comm'n App.1933); *Hegar v. Tucker*, 274 S.W.2d 752 (Tex.Civ. App.—Galveston 1955, writ ref'd n. r. e.).

Lastly, and again alternatively, Modular contends that the court erred in failing to hold the contract fully performed because the city did not in good faith timely determine its requirements as a matter of law. The contention is not viable. Neither party filed pleadings addressed to the questions whether the city, if it had the option, exercised that option in good faith and within the limits of commercial reasonableness as required by V.T.C.A., Bus & C. § 2.311. Those questions are fact questions to be resolved in the trial court. *Farmers Equipment Co. v. Miller*, 252 Ark. 1092, 482 S.W.2d 805 (1972); *Dorsey Bros., Inc. v. Anderson*, 264 Md. 446, 287 A.2d 270 (1972); *Robinson v. Jonathan Logan Financial*, D.C. App., 277 A.2d 115 (1971). Since the trial court was not requested to, and did not, determine those factual questions and render declaratory judgment with respect thereto, we express no opinion in the matter. This court is not permitted to determine material fact questions and render judgment thereon. *Gulf Land Co. v. Atlan-*

*tic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73 (1939).

Modular's points of error are overruled.

The declaratory judgment rendered by the trial court is affirmed.