Adrian VELA, et al., Appellants,

v.

**PENNZOIL PRODUCING COMPANY, et al., Appellees.**

No. 04–84–00558–CV.

Court of Appeals of Texas, San Antonio.

Nov. 26, 1986.

Patton G. Lochridge, Austin, for appellants.

Donato Ramos, Mark D. Willett, Laredo, for appellees.

Before ESQUIVEL, BUTTS and KLINGEMAN *, JJ.

## OPINION

KLINGEMAN, Justice (Assigned).

This is a suit in Zapata County, Texas by a family of landowners (the Velas) against the lessee of an oil and gas lease (Pennzoil) for cancellation of certain pooling and unitization designations, and for other affirmative relief. Both sides filed motions for summary judgment. The trial court granted Pennzoil's motion for summary judgment, but refused to grant the Velas' motion for summary judgment. The Velas timely perfected their appeal.

In this opinion the Velas will sometimes be referred to as appellants, plaintiffs, or the Velas. Pennzoil Producing Company, et al, will be referred to as either appellees, defendants, or Pennzoil.

The Velas, who are landowners in Zapata County, executed separate oil, gas and mineral leases on two different tracts of land, which leases were later acquired by Pennzoil. The first lease was dated November 20, 1972 and covered a tract of 158.3 acres; the second lease was dated February 24, 1973 and covered a tract of 160 acres. Problems arose between the Velas and Pennzoil as to the validity of Pennzoil's tender of shut-in payments, and after some negotiation, a ratification agreement was executed by the Velas, who received a cash consideration in connection with such ratification. The effect of this ratification is one of the questions involved in this appeal.

After production had been obtained, appellee filed two unit designations and pooling agreements in the Deed Records of Zapata County on July 1, 1977. Appellees contend that the filing of the unitization agreements in the Deed Records of Zapata County put appellants on notice of their existence, and the Velas were charged with full notice of the contents and effects of such pooling agreements. Appellees further contend that such unitization agreements were expressly authorized by the provisions of the leases signed by appellants, and which were binding on appellants. They further contend that the production obtained on the Velas' tracts constituted production effective to hold the two leases in existence.

Appellants contend that they were totally unaware of the filing of such unitization agreements in the Deed Records of Zapata County, both at the time they were filed and for an extended period thereafter. After learning of the existence of such pooling and unitization agreements, they had some investigations made and reached certain conclusions, including their opinion that Pennzoil improperly exercised the pooling power, and that the placing of appellants' lands in the two units was done in bad faith. Subsequently a suit was filed for cancellation of the unit provisions, for monetary damages, and for other affirmative relief.

Both appellants and appellees filed motions for summary judgment. The trial court granted appellees' motion for summary judgment, but did not grant appellants' motion for summary judgment.

Appellants assert nine points of error in which they contend:

(1) The trial court erred in granting summary judgment that appellants, the Velas, take nothing against Pennzoil.

* Assigned to this case pursuant to TEX.REV.CIV. STAT.ANN. art. 1812, § (d) (Vernon 1983).

(2) The trial court erred in granting summary judgment for Pennzoil against appellants.

(3) The trial court erred in failing to grant summary judgment for appellants.

(4) Appellants established as a matter of law that the execution of the ratification agreement did not release appellants' claim against Pennzoil for bad faith pooling of their land.

(5) The trial court erred in failing to grant partial summary judgment for appellants.

(6) The property description contained in the unit designation was insufficient as a matter of law and violated the terms and provisions of the Texas Statute of Frauds.

Our discussion in this opinion will be basically in two general areas: (1) Pennzoil's motion for summary judgment, and (2) the Velas' motion for summary judgment. They will be discussed in the order above listed. In addition we will discuss the various contentions made by both appellants and appellees, including but necessarily restricted to:

(1) The release and ratification agreement.

(2) The effect of the filing of the proposed pooling and unitization unit designation in the public records of the county where the land was located.

(3) Good and bad faith pooling and unitization.

(4) The statute of limitations.

### PENNZOIL'S MOTION FOR SUMMARY JUDGMENT

Pennzoil asserts that its motion for summary judgment was properly granted by the trial court, because the summary judgment evidence established as a matter of law that:

(1) The unit designations made by them were fully authorized under the terms and provisions of the leases signed by the Velas, and were based on competent geological information obtained by appellees, and

such units are in the best interest of both lessor and lessee.

(2) The ratification agreement signed by appellants totally bars them from any recovery against appellees.

(3) The pooling and unitization designations were made in good faith, and that the summary judgment evidence establishes this as a matter of law.

(4) The oil, gas and mineral leases involved fully authorized lessee to form the pooled acreage as a unit, by filing in the Deed Records of Zapata County an instrument designating and describing the pooled acreage as a pooled unit, and provides that upon such filing the units shall be effective as to all parties, their heirs, successors and assigns.

(5) The legal description of the properties involved is sufficient as a matter of law and does not violate the Texas Statute of Frauds.

Pennzoil, as the movant in its motion for summary judgment, had to establish that it was entitled to the judgment as a matter of law.

A summary judgment may be properly granted only when there is no genuine issue of material fact. TEX.R.CIV.P. 166–A. The burden of proof in a summary judgment case is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against the movant. All conflicts in evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. *Farley v. Prudential Insurance Co.*, 480 S.W.2d 176, 178 (Tex.1972); *Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41 (Tex. 1965).

 In reviewing a summary judgment record, it is the duty of an appellate court to apply the following rules:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.

TEX.R.CIV.P. 166–A(e); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970).

(2) In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favoring the non-movant will be taken as true. *Cowden v. Bell*, 157 Tex. 44, 300 S.W.2d 286 (1957).

(3) Every reasonable reference must be indulged in favor of the non-movant and any doubt resolved in their favor. *Hudnall v. Tyler Bank & Trust Co.*, 458 S.W.2d 183 (Tex.1970); *Womack v. Allstate Insurance Co.*, 156 Tex. 467, 296 S.W.2d 233 (1956); *Gulbenkian v. Penn*, 141 Tex. 412, 252 S.W.2d 929 (1952).

## RELEASE AND RATIFICATION

Pennzoil relies heavily on its contention that the release and ratification agreement signed by appellants totally bars them from any recovery against Pennzoil, and entitled Pennzoil to a summary judgment as a matter of law.

Appellants deny this vigorously and contend:

(1) The dispute over the units had not arisen at the time of the signing of the ratification agreement and therefore was not encompassed in that settlement agreement.

(2) The ratification agreement is simple and unambiguous. It refers only to the ratification of the oil, gas and mineral lease covering the 160 acre tract. No mention is made of unitization or of any gas unit, whether existing or to be formed thereafter, or of Pennzoil's conduct in creating such unit. Appellants acknowledge that they may have approved or adopted the terms of the lease, but they did not approve or adopt Pennzoil's violation of the lease terms (bad faith exercise of the pooling clause in the lease).

In essence they contend that the lease ratification agreement by its own terms does not bar this suit.

In support of such contention they cite the case of *Yelderman v. McCarthy*, 474 S.W.2d 781, 784 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). In *Yeld-*

*erman* the lessor did ratify a unit created by its lessee. In that case the working interest owner under a mineral lease filed a unit declaration that was unauthorized under the terms of the lease. It was claimed, however, that the lessors had ratified the unauthorized unitization by accepting royalty checks tendered as payment reflecting the lessor's specific interest in the unit. In holding that the ratification had occurred, the court stated:

The authority granted the lessee . . . to effect a unitization of the mineral interests included [in the lease] with other mineral interests in the immediate vicinity constituted him the agent of the lessors with limited authority. . . . A principal will be held to have ratified the unauthorized action of his agent in dealing with his property by any conduct affirming the action, including the acceptance of benefits flowing therefrom, *if the principal has knowledge of the agent's action.* (Emphasis supplied)

*Yelderman*, 474 S.W.2d at 784.

Appellants further rely on language in the case of *Westbrook v. Atlantic Richfield Co.*, 502 S.W.2d 551 (Tex.1973). This case is not exactly in point as it involved a dispute of whether a plaintiff had a working interest, or royalty interest, in certain property. The Supreme Court held that an agreement therein did not constitute a ratification of an expired lease, because the prior lease was not expressly recognized in clear language.

Appellants urge that under *Westbrook* the ratification agreement executed by them in 1977 could have effected a ratification of the July 1977 unit designation only by making an express and clear reference to such unit designation. They urge that the August 1977 agreement did not constitute a ratification of the two gas units because the agreement contained no mention whatsoever of the agreement, or of any gas units, but only refers to the two leases.

Appellees contend that the release and ratification agreements signed by appellants are broad and inclusive, and under

such agreements appellants clearly released all claim appellants may have had against appellees relating to the actual pooling and unitization. Pennzoil contends that the law in Texas as to whether a particular act or agreement constitutes ratification is a question of intent, and that the August 1977 lease ratification agreement contained a release of defendant's unauthorized pooling because there was not contrary intent shown by expressly limiting the release, and that the instrument as a whole including the unit designation on file in the Deed Records shows that the parties intended to include such unit designation.

■ Texas courts have uniformly limited the affect of a release to a claim only where the releasing instrument mentions the claim to be released. Any claims not clearly within the subject matter of the release are not discharged, even if such claims existed at the time the release was executed. *Baker v. City of Fort Worth,* 146 Tex. 600, 210 S.W.2d 564, 567–68 (1948); *Houston Oilers, Inc. v. Floyd,* 518 S.W.2d 836, 838 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Loy v. Kuykendall,* 347 S.W.2d 726, 728 (Tex.Civ. App.—San Antonio 1961, writ ref'd n.r.e.).

■ Appellants' contentions as to why the August 1977 lease ratification agreement was not a release of appellants' claim against Pennzoil for unauthorized bad faith in forming the land included in the two gas units may be summarized as follows:

(1) The agreement was a part of an intended settlement of a dispute covering only the *validity of the lease* covering the two gas units. (Emphasis supplied)

(2) It is undisputed that at the time the agreement was signed, no claim had been made or even discussed by the parties concerning the pooling of the 160 acre tract, and that the appellants at the time were totally unaware of any effort or any intention by Pennzoil to unitize their land.

(3) The agreement refers only to a "dispute as to the validity of said lease," and to appellants' desire to ratify the lease as a part of the settlement of that dispute only. Although the release contained the term "all damages, claims or causes of action claimed or asserted against Pennzoil," it is clear from the release as a whole that this broad language involved the validity of the lease and did not cover the claim now asserted in this suit that appellees, as owners and holders of valid leases, have improperly pooled and unitized appellants' land in violation of the terms of the lease.

Appellants urge that release by ratification requires proof that:

(1) Appellants actually knew of the designated gas units.

(2) Appellants knew or had reason to know that the units had been formed in bad faith.

(3) Appellants signed the ratification agreement with this knowledge.

(4) The ratification agreement was intended to ratify not only the 160 acre lease in dispute at that time, but also the two gas units that purported to include the 160 acre tract.

(5) Pennzoil was obligated to conclusively prove each one of these facts in order to obtain summary judgment against appellants.

We have concluded that appellees were not entitled to a summary judgment on their contention that the execution of the release and ratification agreement by appellants totally bars appellants from any right to recover against Pennzoil.

## PUBLIC NOTICE

We next consider Pennzoil's contention that any claim or asserted claim by appellants for any type of release against appellees is also barred by the filing by appellees of a notice in the Deed Records of Zapata County, Texas, designating certain pooling and unitization agreements covering appellants' lands or portions thereof.

Appellees contend that the oil and gas leases executed by appellants fully authorize appellees to form such units by giving such notice in the manner they did, and

also further provided that the notice filed shall be effective as to all parties affected thereby, including but not necessarily restricted to appellants.

Appellees urge that under the terms and provisions of the lease that appellants signed, appellants were put on notice as to any unit designation filed in the County Deed Records one month before the signing of the ratification agreement, and that the public notice was effective as to the appellants, and they cannot seek to avoid something they agreed to upon execution of the lease agreement.

Appellees basically contend that constructive notice given by the filing of such unit designation in the Deed Records of Zapata County, Texas, was as effective as actual notice and as binding as actual notice.

■ Appellants vigorously contend that the pooling and unitization provisions were not binding on them as a matter of law. Appellees basically assert that such units were made in good faith and that the summary judgment evidence establishes this as a matter of law. The general rule is that which constitutes good faith and bad faith is one of fact, to be resolved by the fact finder. *Elliott v. Davis*, 553 S.W.2d 223, 226 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *Modular Technology Corp. v. City of Lubbock*, 529 S.W.2d 273 (Tex.Civ. App.—Amarillo 1975, writ ref'd n.r.e.).

■ We are not here holding that the question of good or bad faith pooling can never be established as a matter of law. We are simply holding that in this case Pennzoil did not establish as a matter of law that such unit designations were made in good faith by appellees.

■ We do not agree the filing of such notice in the Deed Records of Zapata County alone totally bars appellants from any recovery against appellees. There are other matters involved which we consider necessary, including the question of good or bad faith pooling.

## VELAS' MOTION FOR SUMMARY JUDGMENT

The Velas as movants in their motion for summary judgment have the same difficult burden of proof as confronted by Pennzoil in its motion for summary judgment, which we have heretofore discussed in some detain in this opinion. For that reason we will not here repeat that discussion. In brief, it was incumbent on the Velas to establish that they were entitled to a judgment against Pennzoil as a matter of law.

In support of their motion for summary judgment, the Velas assert that they established by competent summary judgment evidence that:

(1) Pennzoil was guilty of bad faith pooling and unitization in the formation of the unit designations here involved as a matter of law.

(2) The property descriptions obtained in the two gas unit designations fail to comply with the Statute of Frauds, and that the descriptions are fatally defective, rendering the unit designations unenforceable as a matter of law.

## BAD FAITH POOLING AND UNITIZATION

We have heretofore discussed the issue of good or bad faith pooling and unitization in connection with Pennzoil's motion for summary judgment where we held that Pennzoil did not establish good faith pooling and unitization as a matter of law. This was not a holding, implied or otherwise, that the Velas had established bad faith pooling and unitization as a matter of law. We are here confronted with the other side of the coin in this matter: Did the Velas establish that Pennzoil was guilty of bad faith pooling and unitization as a matter of law. As a general rule, what constitutes good faith or bad faith pooling and unitization is a fact question to be resolved by the trier of the facts. *Elliott v. Davis, supra* at 226; *Modular Technology Corp. v. City of Lubbock, supra.*

*Elliott v. Davis, supra,* involved a pooling provision contained in an oil and gas lease. The lessors (plaintiffs) contended

that they had established by competent summary judgment evidence that the pooling power in the lease was exercised in bad faith as a matter of law and that therefore there were no fact issues concerning bad faith. The trial court granted plaintiffs' motion for summary judgment. After an extended discussion the court of appeals held that there was a fact issue on the question of the failure to exercise good faith in making the pooling designation. The judgment of the trial court was reversed and the case remanded to the trial court for a new trial.

Although it has been said that the lessee has a fiduciary obligation in the exercise of the pooling power, it is submitted that the lessee is not a fiduciary and that such a standard is entirely too strict. This is so because the lessee has not undertaken to manage and develop the property for the sole benefit of the lessor. The lessee has a substantial interest that must be taken into account, and it would not be required to subordinate its own interest to the interest of the lessor. Since its interests are frequently in conflict with those of its lessor, it must exercise its power in good faith, taking into account the interest of both the lessor and lessee. KUNTZ, THE LAW OF OIL AND GAS, § 48.3, p. 218.

We have concluded that: (1) appellants did not establish as a matter of law that Pennzoil was guilty of bad faith pooling and unitization, and (2) the question of whether there was bad faith pooling and unitization by Pennzoil was a question of fact to be decided by the trier of the facts.

## STATUTE OF FRAUDS

By two points of error appellants assert that:

(1) The trial court erred in failing to grant summary judgment for appellants because each of the two gas unit designations filed by Pennzoil fails to satisfy the Texas Statute of Frauds as a matter law, and is therefore unenforceable against appellants.

(2) In the alternative the trial court erred in granting summary judgment for Pennzoil because there are genuine issues of material facts as to whether the two gas unit designations filed by Pennzoil failed to satisfy the Texas Statute of Frauds.

The Texas Statute of Frauds provides that a contract for the sale of real estate is not enforceable unless it is evidenced by a signed writing or memorandum containing an adequate description of the property. TEX.BUS. & COM. CODE ANN. § 26.01 (Vernon Supp.1984); *Pick v. Bartel,* 659 S.W.2d 636, 637 (Tex.1983). This statute applies to any transfer of an interest in land, including oil and gas leases. *Minchen v. Fields,* 162 Tex. 73, 345 S.W.2d 282, 287–88 (1961). A pooling or unitization of mineral leasehold interests is regarded as a transfer of an interest in real estate, and is subject to the Statute of Frauds and is unenforceable unless evidenced by a writing that sufficiently identifies the particular property. 6 H. WILLIAMS & C. MEYERS, OIL & GAS LAW §§ 924, 929 (1985); *Kuklies v. Reinert,* 256 S.W.2d 435 (Tex.Civ.App.—Waco 1953, writ ref'd n.r.e.).

To comply with these statutory requirements, the written property description in each unit designation of tracts had to furnish within itself or contain references to some other identifiable or existing writing, the means or data by which the particular land to be conveyed, could be identified with reasonable certainty. *Pick v. Bartel, supra; Morrow v. Shotwell,* 477 S.W.2d 538 (Tex.1972).

Appellants urge that, tested by these standards, the property descriptions in this case are invalid and unenforceable because they do not satisfy the Statute of Frauds.

Appellants in particular assert that the property description in both the 5800 Foot Vela Sand Unit and the 6550 Foot Vela Sand Unit are inadequate and do not comply with the Statute of Frauds in several particulars:

(1) Locating the starting point and other calls in the description of the 5800 Foot Unit designation depends on outside refer-

ence without enough information to adequately locate such references.

(2) Neither the point of beginning or other calls in the description of the units involved can properly be identified from the description without resorting to inadmissible extrinsic proof.

(3) The plat attached to the gas unit designation is not incorporated into and made a part of such instrument and therefore is inadmissible extrinsic evidence.

(4) The metes and bounds description refers to several leases and tracts of land that cannot be located with reasonable certainty from the writing referred to in the description.

Pennzoil in its response to appellants' contentions asserts that if appellant wanted to defeat appellees' motion for summary judgment on the basis that there was an issue of fact, or issue of law, as to the adequacy of the description of the unit, it was incumbent on appellants to come forward with competent summary judgment evidence to that effect. *Kuper v. Schmidt*, 161 Tex. 189, 338 S.W.2d 948, 951 (1960).

Appellees further assert that appellants failed to do this, and that there is no summary judgment evidence, either by way of deposition or otherwise, to support appellants' contentions.

■ Summary judgments must stand on their own merits, and the non-movant's failure cannot supply by default the proof necessary to establish the movant's right. *Fulenwider v. City of Teague*, 680 S.W.2d 582 (Tex.App.—Waco 1984, no writ).

■ Appellees acknowledge that the written property description in each unit description had to furnish within itself, or certain references to some other identified and existing writing, the means or data by which the particular land to be conveyed could be identified with reasonable certainty. However, appellees assert that an attached map also became a part of the written contract and can be used in aid of a defective written description if the map contains enough descriptive information. *See U.S. Enterprises, Inc. v. Dauley*, 535 S.W.2d 623 (Tex.1976).

Appellees rely on the summary judgment affidavit of their expert witness, Mr. C.W. Howland, who testified that he was able to locate the property, acreage and leases involved within the unit designations from the property description and the attached map.

We have concluded that the summary judgment evidence does not establish that the property description is fatally defective and in violation of the Texas Statute of Frauds as a matter of law. However, we have also concluded that there are genuine issues of material fact as to whether the description of the gas unit designations filed by Pennzoil satisfy the Texas Statute of Frauds.

We have heretofore held that the trial court erred in granting Pennzoil's motion for summary judgment. We are now also holding that the trial court did not err in failing to grant appellants' motion for summary judgment. The trial court should not have granted either appellees' or appellants' motion for summary judgment.

The judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial.