Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★

# OPINION

No. 04-08-00506-CV

R. Lowell and Paula E. **GAUT**,
Appellants

v.

Miguel R. And Gloria R. **DANIEL**, and Anna G. Gonzalez, Individually and as
Representative of the Estates of Alice L. Garcia and Abelardo G. Garcia, Deceased,
Appellees

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-06-249
Honorable Alex William Gabert, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  June 24, 2009

REVERSED AND RENDERED

       We withdraw our opinion and judgment dated May 20, 2009 and issue the following opinion

and judgment in their stead.    R. Lowell and Paula E. Gaut appeal the trial court's judgment

rendering their deed to 47.71 acres void.  The Gauts raise seven issues on appeal; however, we

address only the first issue, which requires us to reverse the trial court's judgment and render

judgment in favor of the Gauts.

## BACKGROUND

In this trespass to try title lawsuit, Miguel R. and Gloria R. Daniel sought to establish title by deed to 28 acres in Duval County, Texas. The Daniels sued Anna Gonzalez individually and as Representative of the Estates of her parents, Alice and Abelardo Garcia; the Garcias were the grantors of the 28-acre deed to the Daniels. The Daniels also sued Lowell and Paula Gaut, who claim ownership of a 47.71-acre tract under a warranty deed and as bona fide purchasers. The Daniels claim their 28 acres is within the acreage purchased by the Gauts. Anna Gonzalez was the grantor of the 47.71-acre deed to the Gauts.

Following a bench trial, the trial court held the description of the land in the Daniels' 28-acre deed was sufficient to convey title, awarded attorneys' fees to the Daniels, cancelled the Gauts' deed, and denied all other relief. Findings of fact and conclusions of law were issued indicating the 28-acre deed to the Daniels was sufficiently certain to convey the property to them. Additional findings and conclusions were entered which generally favored the Gauts over Anna Gonzalez; however, no new or amended judgment was entered.

The Gauts filed a motion for new trial, and sought modification and correction of the judgment. The motion was overruled; this appeal followed.

### SUFFICIENCY OF THE DANIELS' 28-ACRE DEED

In their first issue, the Gauts challenge the sufficiency of the Daniels' 28-acre deed. The Gauts argue the deed is void as a matter of law because the land cannot be located by the description in the deed, and the deed does not reference any existing extrinsic document to supply necessary specificity. Therefore, they conclude there was insufficient evidence to support the trial court's finding that the deed was valid. We agree.

In order to obtain a judgment in a trespass-to-try-title action, the plaintiff must usually do one of the following: "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). The Daniels contend the land in dispute was conveyed to them by a deed dated October 22, 1990 from the Garcias. This land was part of a larger parcel of 47.71 acres sold to the Gauts by Gonzalez, the Garcias' daughter, in 2006. The Gauts contend the legal chain of title shows the land purportedly conveyed to the Daniels in 1990 was actually legally conveyed to Gonzalez by deed from her parents in 1991. Review of the record reveals that how much property Gonzalez actually owned, as well as the location of that property, are matters of dispute. Regardless, the question raised by the Gauts regards the sufficiency of the Daniels' 28-acre deed.

To be sufficient, a writing conveying title must provide within itself, or by reference to some other existing writing in existence at the time of the deed, the means or information by which the land being conveyed can be identified with reasonable certainty. *Williams v. Ellison*, 493 S.W.2d 734, 736 (Tex. 1973) (citations omitted). This has been termed the "nucleus of description" theory. *Id.* Under this theory, if the deed contains a "nucleus of description," parol evidence may be introduced to explain the descriptive words in order to locate the land. *Gates v. Asher*, 154 Tex. 538, 541, 280 S.W.2d 247, 248 (1955) (citations omitted). "If enough appears in the description so that a party familiar with the locality can identify the premises with reasonable certainty, it will be sufficient." *Id.*

Extrinsic evidence may be used "only for the purpose of identifying the [property] with reasonable certainty from the data" contained in the contract, "not for the purpose of supplying the location or description of the [property]." *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983). "[I]f there appears in the instrument enough to enable one by pursuing an inquiry based upon the information contained in the deed to identify the particular property to the exclusion of others, the description will be held sufficient." *Templeton v. Dreiss*, 961 S.W.2d 645, 658 (Tex. App.—San Antonio 1998, pet. denied). However, it is important to note the following:

> The certainty of the contract may be aided by parol only with certain limitations. **The essential elements may never be supplied by parol.** The details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol. But the parol must not constitute the framework or skeleton of the agreement. That must be contained in the writing. Thus, resort to extrinsic evidence, where proper at all, is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum.

*Wilson v. Fisher*, 144 Tex. 53, 57, 188 S.W.2d 150, 152 (1945) (citation omitted) (emphasis added).

The deed in question first generally references the Duval County surveys out of which the 28 acres can be found. None of these surveys are part of the record. The deed also notes the 28 acres as "being out of a called 399.5 acre tract designated as Share No. 6, as set aside to Alice L. Garcia . . . ." It then references several surveys of the partitioned land from which the 399.5 acre tract was taken.

Following the general description summarized above, the deed provides the following more particular description:

> BEGINNING at the NW corner of a 17 acre tract for the place of beginning and NE corner of this 28 acre tract;
>
> THENCE in a southeasterly direction, 1173 feet to point for the SE corner of this 28 acre tract;

> THENCE in a southwesterly direction, 760.5 feet to a point for the SW corner of this 28 acre tract;
>
> THENCE in a northwesterly direction 881.2 feet to a point for the NW corner of this 28 acre tract;
>
> THENCE in a northeasterly direction and parallel with Hwy 59, 1388.2 feet to the NE corner of this 28 acre tract and place of beginning.

The Gauts supply several arguments supporting their contention that the above language was insufficient to convey title to the Daniels. First, the Gauts contend the deed attempts to convey an unidentified portion of the 399.5 acres in Share 6. Location is an essential element of a deed which cannot be supplied by extrinsic evidence. *See Wilson*, 188 S.W.2d at 152. The language above provides no reference to the location of the 17-acre tract mentioned in the first call, no means within the deed to locate the tract, and no reference within the deed to any existing extrinsic writing which might assist in determining the location. *See Williams*, 493 S.W.2d at 736. In addition, there is no evidence of any deed to a 17-acre tract within Share 6. The only extrinsic document the deed refers to is the 1950 partition deed for 399.5 acres, which provides no information to assist in locating the 28 acres attempted to be conveyed forty years later.

Next, the Gauts note that the Daniels claim the nuclei of description consists of all four calls and distances; courses, lengths, metes, and bounds; reference to a partition deed; and one monument. The Gauts refute this claim with the following: 1) the distances provided have no identified terminal points; 2) the courses are defined only generally (southeasterly, southwesterly, etc.) without angles, so there are no metes and bounds (defined as boundary lines of land, with their terminal points and angles), *see Lefler v. City of Dallas,* 177 S.W.2d 231, 234 (Tex. App.—Dallas 1943, no writ); 3) the reference to the "northwest corner of a 17-acre tract" does not describe a terminal point because the location of the tract is not identified; 4) the partition deed referenced in the 28-acre deed describes

several tracts, one of which (Share 6) is the 399.5 acre tract, providing no information to fix the location of the 28 acres within the acreage; 5) the deed references a survey of the land out of which the 28 acres is taken, but does not provide a clue as to where within it the 28 acres can be found; 6) the only monument referenced—a line parallel with Hwy 59—provides a directional orientation of one boundary line but no information about its location; and 7) the monument the Daniels' surveyor found which he says is the start point, at the edge of 17 acres owned by the Daniels, is not referenced in the deed, and the deed does not make any reference to the Daniels as owners of contiguous acres or state the 17 acres is actually a combination of two tracts.

The Daniels presented parol evidence showing taxing authorities, TxDOT, and oil exploration companies identified the Daniels as the owners of the 28-acre tract. They also introduced photos showing a fence Daniel said he rebuilt and a gate he erected, and testified that "everyone" knew they owned the land. However, none of this evidence is relevant to the sufficiency of the deed because it was not referenced within the deed. *See Williams*, 493 S.W.2d at 736.

The Gauts criticize the Daniels' reliance on their surveyor's testimony to prove sufficiency of the deed. The Daniels' surveyor surmised that the 17-acre tract must be a combination of two tracts previously purchased by the Daniels. The surveyor stated it was logical to assume the 28 acres purchased by the Daniels were contiguous to their existing property. However, there is no reference to this effect within the deed. While the surveyor was able to plot what he believed to be the 28 acres, he was able to do so only through the use of several extrinsic resources, none of which are referenced in the deed. The surveyor agreed that the 28-acre deed was not internally sufficient, that the call "parallel with Hwy 59" did not say how far the boundary was from the highway, and that, from the

deed alone without seeking outside evidence, the angulation of the lines or shape of the tract cannot be determined.

The crux of the Gauts' argument is that the extrinsic evidence and assumptions utilized by the Daniels and their surveyor were critical to supply a location for the 28 acres, not to merely explain the meaning of the words used in the deed. *See Pick,* 659 S.W.2d at 637. Based on the assumptions that the 17 acres referenced in the deed were actually made up of two plots owned by the Daniels, that the 28 acres were contiguous to the Daniels' existing acreage, that the beginning point was on Hwy 59, and that a monument not referenced in the deed must have provided one of the corners of the tract, the surveyor testified he was able to complete his survey by reading the calls backward. However, he also testified that while the survey fit the deed very well, if the deed were read forward, the first distance is transcribed incorrectly and off by about 465 feet. This difference increased the line from 1173 to 1638 feet, resulting in additional acreage. None of the surveyor's assumptions were based on information provided within the deed itself. The terms of deed itself, without a starting point and angles, and with no references to pertinent extrinsic evidence, were insufficient to describe the land being conveyed.

The Daniels argue that the deed does reference extrinsic sources in stating that the land is taken out of the A.B.&M. Survey 412 [sic 413] and also out of a called 399.5 acre tract. However, "a deed purporting to convey land, which describes it only by quantity and as being part of a larger tract, with nothing whereby to identify what specific portion of the larger tract is intended to be conveyed, is void for uncertainty of description." *Smith v. Sorelle*, 126 Tex. 353, 358-59, 87 S.W.2d 703, 705 (1935).

The Daniels cite several cases in support of their contention that the 28-acre deed was sufficient and therefore the trial court did not err in finding in their favor; however, each of these cases can be distinguished from the case at bar. In *Knupp v. Miller*, 858 S.W.2d 945 (Tex. App.—San Antonio 1993, writ denied), the deed involved included an erroneous first call in its description of the property; however, the calls used in the description included directions, distances, and angles. *Id.* at 947-50. A different surveyor made a map of the property based on relevant deeds which put the land where the first surveyor placed it after correcting the ambiguous first call. *Id.* at 949-50. The distinction between *Knupp* and the case at bar is that while the first call was erroneous, it was not missing; all of the calls in the Daniels' deed are missing essential elements.

The Daniels also cite a case from this court, *Templeton v. Dreiss*, 961 S.W.2d 645 (Tex. App.—San Antonio 1998, writ denied). *Templeton* involved a dispute regarding an "undivided interest" in a road described in deeds as a 20-foot strip of land; no metes and bounds were provided. *Id.* at 650, 656. The court held there was a nucleus of description sufficient to locate the land in question, as the original deed referred to a survey (attached to and incorporated in the deed) which located the road on the ground. *Id.* at 659. The distinction between this case and the Daniels' is that the deed in *Templeton* provided within itself a sufficient means of determining the particular property; the Daniels' deed does not reference extrinsic sources providing identifying information.

Another case relied on by the Daniels, also from this court, is *Vela v. Pennzoil Producing Co.*, 723 S.W.2d 199 (Tex. App.—San Antonio 1986, no writ). In *Vela* there was a dispute regarding the sufficiency of descriptions of gas unit designations. *Id.* at 201. The appellants appealed a summary judgment issued in favor of Pennzoil (the lessee), claiming the starting call location required resort to outside references; extrinsic proof was needed to identify the location of the calls; the plat referred

to was not incorporated into the designations; and references made to leases and tracts could not be located with reasonable certainty. *Id.* at 206-07. The Daniels support their argument with the fact that in *Vela*, this court held the gas unit designations were not insufficient as a matter of law; however, one important factor missing from the Daniels' argument is that the court also stated material questions of fact remained, which is why the summary judgment was reversed. *Id.* at 207.

Based on the above, the trial court erred in finding the Daniels' 28-acre deed was sufficient. Because nothing identifies which 28 acres out of the 399.5 are being conveyed, the deed is void. The Gauts' first issue is sustained.

## CONCLUSION

Based on the above, we conclude the 1990 deed conveying 28 acres from the Garcias to the Daniels is void for insufficient description, and render judgment in favor of the Gauts. Because we reverse on the first issue, we need not address the remaining issues brought forth by the Gauts.

Catherine Stone, Chief Justice