Mrs. Adan **VALADEZ**, et al., Appellants,

v.

Mrs. Pedro **BARRERA**, et al., Appellees.

No. 16767.

Court of Appeals of Texas, San Antonio.

Jan. 12, 1983.

Rehearing Denied Feb. 15, 1983.

John B. Peacock, Jr., Falfurrias, Terry A. Canales, Canales & Barrera, Alice, for appellants.

B.J. Shepherd, Alice, David Garcia, Falfurrias, Homer E. Dean, Jr., Alice, John E. Dorris, Victoria, Herschel Martin, San Antonio, Ellis Morris, Houston, for appellees.

Before CADENA, C.J., and ESQUIVEL and BUTTS, JJ.

## OPINION

BUTTS, Justice.

This is a trespass to try title action brought by the heirs of Benito Garcia, Sr. and wife, Lorenza, to recover possession and title to two tracts of land of approximately 14 acres located in Brooks County. They claim by adverse possession only, relying upon the ten year statute of limitation. Tex.Rev.Civ.Stat.Ann. art. 5510 (Vernon 1958). Among several defendants were Benito Garcia, Jr. and his wife, Virginia, the Miller brothers, Laurence, Jr., Gardner, and John, and Mrs. Adan Valadez as well as other Garcia heirs. Cross-actions by the Millers and Salinas against Crown Central Petroleum Corporation have been severed. (No. 16699; No. 16700)

Intervenor Frank Salinas pressed his claim for title to a part of the acreage based on his lumber company's foreclosure proceedings against the Garcias, Jr. The trial court ruled that Salinas' claim for debt (deficiency owed after purchase) was barred by the four year statute of limitation. Tex. Rev.Civ.Stat.Ann. art. 5527 (Vernon 1958). In addition, the trial court, after ruling that no fact issues existed as to the Millers, Valadez, and Salinas, instructed the jury to return a verdict for plaintiffs. The instructed verdict forms the foundation for twenty-two assertions of error by the Millers, Valadez, and Salinas. We agree that the trial court erred in directing the verdict and reverse the case.

## FLOWELLA TOWNSITE

A background study of the subject fourteen acres proves instructive. Evidence shows that around 1910 certain land companies sold lots and acreage in the south Texas area, one of those companies being Burton and Danforth Land Company. Two men, Burton and Danforth, obtained land from the King Ranch, that land once being part of an 18,000 acre pasture known as La Parrita Ranch. They caused the land to be surveyed and platted; calling one of the Burton and Danforth subdivisions *Flowella Townsite*. The town was laid out in a circle around a flowing well. This was the center of Flowella, surrounded by streets, parks and lots which comprised four additions: Marlborough Court, Rosemere Court, Vandeventer Court, and Belleview Court. It is Belleview Court which contains the subject

land of this appeal, the land being certain numbered lots in section 14.

A witness, Neil Rupp, testified that as a boy he worked with the surveyors who platted the Flowella townsite. He testified he saw the resulting work and that the "blueprint" of the town was burned in a courthouse fire later. The town of Flowella did not prosper, although for a time there was a school in the vicinity. The land reverted to its natural state of brush and grass except for those acres used for farming and grazing. It was poor land, not providing much for families who worked just a few acres. Rupp stated he owned about 2,000 acres and knew most of the inhabitants of the area, including the Garcia, Sr. family, some of them having worked for him.

### THE GARCIA CLAIM

There was evidence that Garcia, Sr., with his wife, moved onto the north part of the 9.52 acres, tract one, around 1919. They lived in a small house with their ten children. Garcia, Sr. purchased that lot and other lots in the Belleview Court section from Robert Miller, predecessor in title to the Millers, and others. He farmed about five acres, thus feeding his family and selling some produce. He had livestock, but there was conflicting testimony about the fencing and where the cows and mules were kept. After Garcia's death in 1936, his widow remained in the house. A son, Garcia, Jr. (sued here as a defendant but joining with the plaintiffs in the claim of adverse title) went to war about 1942 and returned after 1945. The widow died in 1976. Another son has recently returned to reside on the 9.52 acreage (tract one). The other heirs live away from the disputed land.

It was Garcia, Jr. who kept livestock on the 9.52 acres even after he moved to Falfurrias. It is clear that the 4.07 acres (tract four) in the southwest corner of Belleview Court in Flowella was never lived upon by the Garcias. Garcia, Jr. and a brother testified they ran a few head of cattle and used the 4.07 acres to "trap" the animals. Testimony revealed that fences on the outside of the smaller acreage had been placed there by the county many years before. Whether or not there had been recent upkeep was not clear. It was not disputed that the smaller tract was, for the most part, overrun with brush. Further, although Garcia, Jr. had never lived on that land, he stated, and others agreed, that he had a "party house" on its southern part, fronted by a county road. The claim by adverse possession of the Garcia plaintiffs to the 4.07 acres rests upon Benito, Jr.'s sketchy activities there, and his alone. Their adverse claim to the 9.52 acres rests also upon his continuing activities there after his mother's death. He and his wife had lived for several years in Falfurrias.

Two events precipitated this trespass to try title action originally filed in August, 1977, by the adverse claimants, the heirs of Garcia, Sr.: (1) In 1970 Garcia, Jr. executed a promissory note, secured by a deed of trust with vendor's lien on the 4.07 acres, to Frank Salinas; (2) later the adverse claimants leased to Crown Central Petroleum Corporation the 14 acres to be included in a pooled unit for production of gas and gas distillate. Crown obtained production in May, 1974.

Basing their claim for the land upon the ten year statute of limitation, Tex.Rev.Civ. Stat.Ann. art. 5510 (Vernon 1958), the Garcia heirs must have instituted their suit within the ten years next after the cause of action accrued. The suit was filed in August, 1977. However, plaintiffs' second amended original petition laid claim to the two tracts not only through the ten years' limitation title but also through the three, five, and twenty-five year statutes, and alleged title within themselves by deeds. On the day of trial the trial court permitted plaintiffs to abandon all pleadings as to title acquired by deed. They then relied solely upon the ten year statute. In addition, plaintiffs abandoned the instruments comprising their abstract of title at the same time.

### THE MILLER CLAIM

The Millers sought to introduce their title to the two tracts of land by a will from

their predecessor, Robert Miller, which devised many of the Belleview lots in question, and other lots in Marlborough Court and Vendeventer Court in Flowella to Laurence Miller, the father of the Miller brothers, defendants. They sought to introduce a deed from their father to Laurence, Jr. which granted the surface estate but which reserved the mineral estate in some lots which are the subject of this suit. Further they sought to introduce the deed from Laurence Miller, their father, to the three of them in which he later granted to them the mineral estate in many of those same lots. Thus they claim some lots in fee simple; in others they claim ownership of the mineral estate. These instruments were included in the Millers' abstract of title, which had been requested by plaintiffs. The trial court, upon objection by plaintiffs, refused to admit these deeds or the will.

Plaintiffs' request for an instructed verdict rested upon the argument that there was an insufficient description in the Millers' deeds and will of the property of this suit; that the property could not be located on the ground; that the townsite of Flowella could not be shown to exist for lack of an official plat. Thus, it is, they maintain, as if the land described in the will and deeds, in fact, never existed at all. In the will and deeds the land is described in this manner:

> ... the following parcels and lots of land [listing specific lot numbers] ... in Belleview Courts, Flowella Townsite, in the Burton and Danforth Subdivision of the Parrita Ranch, according to a plat thereof recorded in the Map and Plat Records of Brooks County, Texas....

Since there exists no official plat of the Flowella townsite, plaintiffs argue, the reference to the "official plat" means nothing. Therefore, the Millers received nothing by will or conveyance by deed, nor did they retain any mineral rights because the deeds granting the surface lands only were void for lack of a valid description. The trial court excluded all the instruments containing reference to Flowella and the numbered lots, ruling they could not be located on the ground and, therefore, were inadmissible.

Plaintiffs attached to their second amended original petition field notes describing by metes and bounds and objects on the ground the two tracts in dispute. The surveyor and maker of these field notes, Alfredo Barrera, testified on cross-examination that he could locate the lots in the Belleview Court of the Flowella townsite on the ground. Other witnesses, both plaintiffs' and defendants', located the property of this suit on the maps of both parties. However, all of the defendants' deeds, maps, and instruments identifying the land by lot numbers were excluded by the court. But we note that plaintiffs introduced into evidence a deed from Mrs. H.M. King to J.L. Burton, dated March 6, 1916, which would constitute a common source of title for the Garcias and the Millers (the same instrument was listed also in the Millers' excluded abstract of title). This deed contains the identical description of the disputed lots in the Flowella townsite as in the defendants' deeds. (*See* description, *infra*).

## THE PLAINTIFFS' BURDEN

■ Trespass to try title is a statutory proceeding. Tex.R.Civ.P. 783 *et seq.* (Vernon 1967). The property sought to be recovered must be described with particularity. Tex.R.Civ.P. 783(b), *supra. Leach v. Cassity's Estate,* 279 S.W.2d 630, 636 (Tex. Civ.App.—Fort Worth 1955, writ ref'd n.r. e.). The defendants must be put on notice which land the plaintiffs seek to recover. *Stewart v. Collatt,* 111 S.W.2d 1131, 1132 (Tex.Civ.App.—Fort Worth 1938, no writ). This means that the plaintiffs assume the burden of describing the real estate with sufficient certainty to identify the land.

■ Where one sues by formal action in trespass to try title for the recovery of real estate in the possession of another, he must recover, if at all, upon the strength of his own title and not upon the weakness or lack of title of his adversary. *Adams v. Rowles,* 149 Tex. 52, 228 S.W.2d 849, 853 (1950); *Wright v. Dabbs,* 220 S.W.2d 681, 684 (Tex. Civ.App.—Waco 1959, writ ref'd n.r.e.). In order for the plaintiffs herein to prevail in

this statutory action, they must prove their own title and cannot rely upon the weakness or defects in the title or proof of the defendants. *Adams v. Rowles, supra,* at 853.

A plaintiff who claims title by adverse possession must establish by pleading and proof that the land he claims is identifiable and can be located in order to show his interest in it. *See Jones v. Mid-State Homes, Inc.,* 163 Tex. 229, 356 S.W.2d 923, 925 (1962), *Ramirez v. Wood,* 577 S.W.2d 278, 282 (Tex.Civ.App.—Corpus Christi 1979, no writ). Plaintiffs in the present case relied upon the surveyor's field notes in their pleading and proof to describe the land. When that same surveyor referred to his field notes and to the excluded maps (in the record by bill of exception) he was able to locate the land in question. It is the plaintiff who must establish the locality of the land he is claiming by adverse title; it is not the defendant who has the burden to establish sufficient description by deeds. If the plaintiff fails to discharge that obligation, the claim of the defendant in possession of the land will be sustained. *Devine v. Keller,* 73 Tex. 364, 11 S.W. 379, 380 (1889).

### THE GARCIA, JR. LAND

A 1962 deed from Laurence Miller, Jr. to Garcia, Jr. (not in evidence) which conveyed several lots in the Belleview Court expressly reserved the mineral estate. Also Garcia, himself, testified he purchased that land from Miller. In 1970, Garcia, Jr. and his wife executed a promissory note, deed of trust and vendor's lien on the 4.07 acre tract to secure repairs on their homestead in Falfurrias. Frank Salinas, owner of the lumber company making those repairs, after foreclosure and sheriff's sale, now asserts his right to tract four as a purchaser at the sale. As an intervenor Salinas stands in the position of a plaintiff in the trespass to try title suit, and his proof must necessarily differ from the other defendants here. We find that the evidence, including Garcia, Jr.'s admission of payments along with his acknowledgment of the debt

after the four year limitation period for collection, raises an affirmative defensive issue for Salinas. We do not rule on the merits of that matter in this appeal; rather, we suggest that the pleadings of all the parties involved merit their attention in the event of a future trial. It is well settled that a party holding title through proper foreclosure proceedings and sheriff's sale may sue in trespass to try title. The fact issues raised by the Salinas' claim and the validity of that claim can properly be determined at another trial.

The defendants and Salinas sought to introduce in evidence plaintiffs' abandoned pleadings and abstract of title. Plaintiffs' chain of title would show that Garcia, Sr. purchased by deed from Robert Miller, predecessor of the Millers, and others, certain lots in the two tracts and that Garcia, Jr. also brought lots in Belleview Court from the Millers.

### ADMISSIONS AGAINST INTEREST

Admissions by a party which have been abandoned may be used in evidence as an admission against interest, but they are not conclusive against the pleader. *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292 (1956). The admissions are, however, evidence that the jury is entitled to consider in deciding the issue, and the probative value of the admissions against interest is a question of fact for the jury. Any admission contained in an abandoned pleading ceases to be binding on the pleader in the sense that he is prevented from disproving facts alleged therein. Such pleading, however, still remains a statement seriously made, and it can be introduced in evidence as an admission. *Kirk v. Head,* 137 Tex. 44, 152 S.W.2d 726, 729 (1941), *West v. Plantation Hills, Inc.,* 497 S.W.2d 460, 463 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ), *Kirkwood & Morgan, Inc. v. Roach,* 360 S.W.2d 173, 177 (Tex.Civ.App.—San Antonio 1962, writ ref'd n.r.e.), *Hughes v. Fort Worth National Bank,* 164 S.W.2d 231, 232 (Tex.Civ.App.—Fort Worth 1942, writ ref'd). Where an abandoned pleading contains clear and unequivocal material admissions against inter-

est, it may be offered in evidence against, or used to impeach, the party on whose behalf it was filed. *Houston E. & W.T.R. Co. v. DeWalt,* 96 Tex. 121, 70 S.W. 531, 537–38 (1902).

 We conclude that the abandoned pleadings and abstract of title contained two admissions against interest of the Garcia heirs: (1) they recognized as valid the descriptions contained in their deeds to the lots in the town of Flowella, Belleview Court, and (2) the Garcias had obtained deeds to many of these lots which reserved all of the mineral estate to the Millers. These admissions contradicted plaintiffs' position at trial. We hold that the trial court erred in excluding plaintiffs' abandoned pleadings and abstract of title from evidence to be considered by the jury as admissions.

 Before it is held that allegations in a trial pleading constitute judicial admissions, it must appear that such allegations are deliberate, clear and unequivocal. *Carter v. Walton,* 469 S.W.2d 462, 469 (Tex.Civ. App.—Corpus Christi 1971, no writ). Plaintiffs' exhibit 23a, *admitted in evidence,* is a warranty deed dated in 1916. Mrs. H.M. King conveyed land to J.L. Danforth, some of that land being the subject property of this suit. It contains the following description:

... in a part of what is known as Burton and Danforth's Parrita Ranch, said land having been purchased by the said Burton and Danforth from Mrs. H.M. King, ... *subdivided by them into lots, blocks and acreage tracts, described and numbered upon a certain map or plat of said Parrita Ranch made for Burton and Danforth by C.F.H. Blucher and Sons, which map or plat is recorded in the Deed Records of Brooks County, Texas and entitled "Map of Parrita Ranch, Nueces, Hidalgo and Starr Counties, platted for Burton and Danforth ..."* (emphasis added).

\* \* \* \* \* \*

18th. The following described town lots in the town of Flowella, which is located in Section Fourteen (14), in Marlborough Court, Rosemere Court, Bellevue (sic) Court, and Vandeventer County (sic), respectively, ... (c) One (1), Ten (10) to Eighteen (18) both inclusive Twenty (20) Twenty two (22) Twenty four (24) to Thirty-two (32) both inclusive Thirty-four (34), Thirty-Six (36) Thirty eight (38) to Forty five (45) both inclusive Forty seven (47) to Fifty-five (55) both inclusive, Fifty nine (59) Sixty one (61) to Eighty (80) both inclusive (Eighty-two (82) to Eighty four (84) both inclusive, Ninety (90) Ninety-two (92) One Hundred (100) to One Hundred Twenty-one (121) both inclusive; One Hundred Twenty-four (124) One Hundred Twenty eight (128) One Hundred Thirty (130) to One Hundred Forty-four (144) both inclusive in Belleview Court.

\* \* \* \* \* \*

Many of these lots are the subject of this suit. When a party introduces written evidence on an issue before a court without limiting its purpose he is bound by its recitations, and cannot be heard to aver against it. *Lock v. Morris,* 287 S.W.2d 500, 501 (Tex.Civ.App.—Texarkana 1956, writ ref'd n.r.e.). We find that this exhibit of plaintiffs constituted a judicial admission that a map of the townsite of Flowella which was platted by a known surveying company before 1916 did exist. A judicial admission, unlike abandoned pleadings, is binding upon a party. *Kirk v. Head, supra,* at 729. When a party makes such an admission of the contents of a document, his adversary may introduce evidence of this admission without producing the original document. This is an exception to the best evidence rule. *Hoefling v. Hambleton,* 84 Tex. 517, 519, 19 S.W. 689, 690 (1892), *McCaskey v. Bewley Mills,* 8 S.W.2d 688 (Tex.Civ.App.— Fort Worth 1928, writ dism'd). Further, in *San Antonio River Authority v. Hunt,* 405 S.W.2d 700 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.) the court wrote that lost Mexican land grants could be proved by secondary evidence of recitals or references in other documents. That same reasoning may apply as to the "official plat" of Flowella in this case.

### THE INSTRUCTED VERDICT

It is the task of this reviewing court to determine whether the record contains any evidence of probative force raising fact issues on material questions presented, considering all of the evidence in the light most favorable to the party against whom the instructed verdict was rendered and to discard all contrary evidence and inferences. *Henderson v. Travelers' Insurance Co.,* 544 S.W.2d 649, 650 (Tex.1976); *Kennedy v. Beasley,* 606 S.W.2d 1, 4 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). A peremptory instruction is warranted only when the evidence is such that no other verdict can be rendered and the winning party is entitled to judgment as a matter of law. *White v. White,* 141 Tex. 328, 331, 172 S.W.2d 295, 296 (1943), *Durham v. Uvalde Rock Asphalt Co.,* 599 S.W.2d 866, 871 (Tex.Civ.App.—San Antonio 1980, no writ). We have determined that certain evidence was wrongfully withheld from the jury's consideration in this case. Now considering that evidence in the light most favorable to the parties against whom the verdict was instructed and disregarding all contrary evidence and inferences, we hold there is evidence of probative force to raise fact issues on material questions presented. *Durham v. Uvalde Rock Asphalt Co., supra,* at 871 and cases cited therein. When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Id.* at 871 and cases cited therein.

Because of our disposition of this appeal, we find it unnecessary to address the remaining points of error. Valadez, the Miller brothers, and Salinas rely upon chains of title originating from a common source. At another trial application of the appropriate statutes and laws of evidence will eliminate many of their claimed errors. Twenty-two of the appellants' allegations of error rested upon the action of the trial court in directing the verdict.

Accordingly, we reverse and remand the trespass to try title case involving the Millers and Valadez for a new trial. We, in addition, reverse and remand Salinas' case in order that his claim of title by foreclosure and sheriff's sale may be tried, in the same proceedings, along with his claim for a deficiency judgment, trustee's fees, and attorney's fees against Benito Garcia, Jr. and his wife.

The judgment is reversed and the case remanded.