John **KNUPP**, James Douglas, and Jill Reed, Appellants,

v.

A.A. **MILLER**, Appellee.

No. 09–92–170 CV.

Court of Appeals of Texas, Beaumont.

July 1, 1993.

Rehearing Denied July 14, 1993.

12. We do not reach Summit's first cross point of error as it was conditioned upon reversal of the award in favor of it.

**946**

Lynwood Sanders, Sanders & Sanders, Orange, for appellants.

Gary H. Gatlin, Jasper, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

The form of the action was in the nature of a trespass to try title case. More importantly, the suit was to recover the value of timber that was wrongfully cut and removed from a tract of land. As well, the plaintiff below sought damages for the cost and expense of restoring the land to its former condition. A juried proceeding resulted in the jury questions being answered favorably to the plaintiff below, A.A. Miller, appellee here.

In fact, the jury answered all the issues favorably to appellee. The jury found for the appellee on several statutes of limitations including the three-year statute, the five-year statute, the ten-year statute, and the twenty-five year statute. The jury found a dollar value measured by the timber cut from Miller's property. As well, the jury significantly found that the timber was cut willfully, wantonly and in total disregard to the rights of the plaintiff, awarding the manufactured value. Attorney's fees were awarded for the successful plaintiff Miller. Specifically, the jury found that the stumpage value of the timber cut was $10,000. In jury question number ten, the jury was asked:

> Do you find from a preponderance of the evidence that the cutting of the timber from the land in controversy was done by the defendants willfully, wantonly and with total disregard for the rights of A.A. Miller?
>
> Answer "Yes" or "No".
>
> Answer: Yes

In answer to question number eleven the jury found that the manufactured value of the timber was $18,850. The attorney's fees awarded were for the preparation and services through the trial proceedings—$3,300; for representing A.A. Miller on appeal, if any, in the Court of Appeals—$1,500; and for representing A.A. Miller on the appeal, if any, in the Supreme Court of Texas—$1,500.

Miller pleaded that the defendants entered onto the land owned by him and cut timber off of approximately 12.5 acres without permission of the plaintiff Miller and that the defendants were without ownership interest in the said property. Further, that the entering upon the plaintiff's land and the cutting of the said timber was willful, wanton and in total disregard to the rights of the plaintiff. The cutting was maliciously done. The defense was that the land from which the timber was cut or harvested was owned by Jill Reed and James Douglas and that such title was alleged to be for 11.5 acres of land more or less described in a conveyance from Everette Rhodes to W.W. Honea dated March

13, 1934, and recorded in Volume 47 at page 564 of the Deed Records of Newton County, Texas.

Plaintiff filed a first amended petition and added several defendants including one John Knupp. Miller in his first amended petition specifically pleaded the three-year statute of limitation of the State of Texas, the five-year statute of limitation, the ten-year statute of limitation, and the twenty-five year statute of limitation. By an amended answer, the defendants denied that there was any timber harvested from lands belonging to Miller. On that basic issue the case was tried. The real issue was who owned the timber.

The plaintiff acquired title to his 12.5 acres of land in question by a certain deed dated June 17, 1959, from Bernell Kerr. The plaintiff diligently went upon the land and found and located his corners. He marked his lines. Thereafter he sold pulpwood timber off of his 12.5 acres. Significantly, he signed a contract with Louisiana Pacific Company for that company to help him manage and properly produce and grow the timber. This management program included the burning off of the tract and properly maintaining it for timber growth on his 12.5 acres. Miller continuously kept his property lines marked right up until the date of the cutting of the timber.

Miller had purchased the 12.5 acre tract which was the more *easterly* tract of land out of a larger tract of land containing about 24.5 acres more or less. This 24.5 acre tract had been owned by Harriet Bean and Albert Bean. The purchase and acquisition of this 12.5 acre tract by the plaintiff was proved. The purchase was evidenced by admitting before the jury plaintiff's exhibit number eight. Miller's 12.5 acre tract was and is located adjacent or near to a 24 acre tract of land owned by a Mr. Lura Rhodes. Mr. Rhodes was quite familiar with Miller's 12.5 acre tract of land. Miller's 12.5 acres was originally owned by certain aunts and kinfolks of the wife of Lura Rhodes.

Rhodes testified that when he was approximately thirteen years of age and thereafter for five years, he had plowed the 12.5 acre tract. Subsequent to his eighteenth birthday, Rhodes had frequently hunted upon the tract until it was sold by his wife's relatives to a Mr. Bernell Kerr. Bernell Kerr was the plaintiff's immediate predecessor in title. Mr. Rhodes clearly testified that the 12.5 acre tract that had been owned by his wife's relatives had been sold by Mr. Kerr to A.A. Miller. Significantly and importantly, Mr. Rhodes testified that after Miller purchased the 12.5 acre tract, Miller and Mr. Rhodes had a common boundary which was evidenced and maintained by means of a fence. Miller's south boundary line joined Rhodes' northern boundary line. Rhodes had actually seen and observed Miller maintaining Miller's property line. Rhodes observed and saw Miller when Miller was cutting bushes, burning the underbrush, and cutting off pulpwood. Rhodes testified that Miller's 12.5 acre tract had a beautiful stand of timber on it—it being the more easterly tract of the 24.5 acre Harriet and Albert Bean tract. However, the more westerly tract which was an 11.5 acre tract claimed by defendants did not have good timber standing. A contended-for—but not viable—issue in this case is that the property description in Miller's deed had a beginning point which was referenced as the southeast corner of a 24 acre Allie and James Powell tract. If this false point is used as a beginning point, it would place Miller's 12.5 acres outside the entire original Bean 24.5 acre tract. This is obviously a mistaken point but the remaining calls and description of Miller's tract are correct.

Interestingly, the 11.5 acre tract which the defendants claim is their property and from which they contend that the timber in question was actually cut from, likewise has an incorrect beginning point. This said incorrect beginning point is the northeast corner of the so-called "22.5 acre tract". Using this incorrect beginning corner, the said defendants' tract of land, being 11.5 acres, would be completely outside the original Bean 24.5 acre tract. In this unusual record the plaintiff Miller proved and the record conclusively confirms that the deed into Jill J. Reed and James Douglas

definitely locates their 11.5 acre tract as being the westerly 11.5 acres out of the Bean 24.5 acre tract. Interestingly, the deed into Jill Reed and James Douglas from LOUISIANA–PACIFIC CORPORATION contains unusual recitations; *e.g.:*

> BEGINNING at the Northeast (should be Northwest) corner of a 22½ (should be 24½) acre tract now owned by Harriett and Albert Bean;

A surveyor, Wallace DuBose, testified. He was asked to determine whether the 12.5 acre tract owned by Miller was the most easterly tract of the original Bean 24.5 acre tract or if the 11.5 acre tract alleged to be owned by the defendants was the more easterly tract. *Mr. DuBose, the surveyor, testified that the 12.5 acre tract owned by Miller was the most easterly tract and was the tract from which the timber was cut.* DuBose explained that there was ambiguous call in Miller's deed wherein it was stated that the beginning point of the metes and bounds description referenced the "S.E. corner of a 24 acre tract set apart for Allie Powell and James Powell". The only miscall is using "Allie Powell and James Powell" instead of "Harriet Bean and Albert Bean". The balance of the description is correct. DuBose as an expert surveyor testified that the reference should have been to the southeast corner of a 24.5 acre tract of Harriet Bean and Albert Bean and then following the metes and bounds description, that description would place Miller's 12.5 acre tract as the most easterly 12.5 acre tract in the Harriet Bean and Albert Bean 24.5 acres and this identical *12.5 acre tract was the tract from which the timber in question was cut.* These facts constituted the basic theory and the basic issues upon which the case was fairly tried below. The jury easily ascertained the truth of the matter and found for Miller on all questions. The jury made no findings for the defendants.

▮ In Texas, by the Constitution, Article I, section 15, the jury's findings are inviolate and the jury has the right to weigh the evidence and assess its valuation to the evidence. The purity and efficiency of the right of trial by jury are to be maintained. *Id.* In rare cases a court of appeals may "unfind" facts which have been determined by the jury. But a court of appeals may not "find" opposite facts. In reality under this record the dissent has attempted to do so. *See and compare Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646 (Tex.1988). The dissent made no attempt to adhere to the dictates of *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex. 1986). The jury passes upon the credibility of the witnesses and the weight to be given their testimony. There is really no doubt, under this record, that the 12.5 acre tract from which the timber in question was cut belonged to Miller and Miller had possessed and marked its corners and fixed its corners and marked its lines. In summary, DuBose's testimony was that by correcting the ambiguous beginning call, the plaintiff's 12.5 acre tract fit into the plat or larger tract of ground like a piece of puzzle—perfectly. DuBose's testimony also shows that the 11.5 acre tract allegedly claimed by the defendants was therefore the most westerly tract in the 24.5 acres.

### David McClintock's Testimony

One David McClintock was employed as a forester for the Louisiana Pacific Corporation. McClintock testified that he was familiar with the 12.5 acres owned and possessed by A.A. Miller. In fact, Louisiana Pacific had assisted Dr. A.A. Miller in maintaining the particular 12.5 acres. The maintenance program involved and included assisting in burning it on two different occasions to effect a burning out of the undergrowth. McClintock testified that there was a good stand of timber on the 12.5 acre tract owned by Miller. This witness knew where the tract of land was as it was situated on the ground. This witness testified that he had been on this 12.5 acre tract a few days before the trial date. McClintock found that the timber had been cut and the tops of the trees had been left on the ground. *This tract of land was the same tract of land that had been possessed by A.A. Miller as the same was actually situated on the ground. McClintock further testified that it was this same tract of land—being the identi-*

cal tract of land as was situated on the ground and known to McClintock—upon which Louisiana Pacific Corporation had helped Dr. Miller to maintain the timber from the same 12.5 acre tract of land from which the timber had been cut but the tops of the trees had been left upon the 12.5 acre tract.

### The District Court's Judgment

■ The district court entered the judgment in this cause using the exact field notes as set out in the plaintiff's deed by which he had purchased and acquired the 12.5 acres from Bernell Kerr, correcting the beginning call. This beginning call was described as being ambiguous in the record. The record reflects that there was nothing unusual about correcting an obviously ambiguous beginning call. Under the entirety of this record the trial court certainly did not fall into error by using and utilizing the correct beginning call or point as the correct call in the judgment. The trial court did not err in its correctly drafted judgment. The judgment conformed to the evidence and the findings of Mr. DuBose. DuBose explained the crucial importance of the senior survey doctrine. As stated and held in *Kirby Lumber Corporation v. Lindsey*, 455 S.W.2d 733 (Tex. 1970), we find:

> " * * * Long acquiescence in a line is evidence from which it may be inferred that the parties by agreement established such line as the true line, and from such acquiescence a jury or a court may find that the line used is the true line. [Citations omitted] ... *[W]hen the true location of the line is conclusively proven, mere acquiescence in another line in the mistaken belief that it is the true line will not support a finding that such other line is the true line.*"

There is a presumption, of course, that [the surveyor] actually surveyed all the lines he called for.... This presumption generally serves the useful purpose of making a junior survey conform to the boundaries of an adjoining senior survey and thus avoiding a vacancy or conflict. It must always be used with due regard for the rule that the recitals in junior surveys cannot be admitted to create an ambiguity in the calls, or change the location, of a senior survey. (Emphasis in original)

The testimony of surveyor DuBose is based upon the fact that he had gone back to a senior survey and had come forward to clear up any mistakes or ambiguities. By reading and analyzing the testimony of Mr. DuBose as a whole, it is very obvious that by going back to the senior survey any ambiguity is resolved and corrected and made certain and conforms after correction to the judgment entered in this case. The record before us shows and proves conclusively that the 12.5 acre tract of land purchased and paid for by Dr. A.A. Miller from Bernell Kerr was actually situated on the ground as the easterly tract of the Harriet and Albert Bean 24.5 acre tract as that 24.5 acre tract was situated on the ground; that A.A. Miller bought and possessed and managed and controlled that easterly 12.5 acre tract of land as it was actually situated on the ground and from that 12.5 acre tract as it was situated on the ground, the said timber was wrongfully cut by the defendants leaving the tree tops on the self-same Miller 12.5 acre tract. And photographic evidence confirmed this testimony.

Wallace Elmo DuBose qualified as a Registered Professional Land Surveyor. He had been registered since 1965. He had had prior experience back to the year 1954. He had done many surveys in Jasper county, Newton county, and east Texas. He clearly understood that the litigation was an endeavor to determine where the 12.5 acres of Dr. A.A. Miller were situated on the ground and also where the 11.5 acres of the defendants were situated. The Registered Land Surveyor platted the tracts; he began with what was termed a working sketch. He began by taking the deeds that were of record and studying and platting the metes and bounds descriptions. He made a map or plat from these documents. DuBose determined based upon his examination that the 12.5 acre tract would be the east 12.5 acres of a 24.5 acre tract that

Harriet and Albert Bean had owned at one time in the past. Also, the 11.5 acre tract claimed by the defendants would be the westerly part of this 24.5 acres. The working plat was drawn by DuBose, himself. The same was entered into evidence as plaintiff's exhibit number eight.

The surveyor testified that from the recitations in the deed from Wilson Rhodes, et al, to Harriet Bean, et vir, which deed is dated October 8, 1925, (that at the end of the field notes) it is clear that the deed calls for 24.5 acres. The surveyor was able to plat as called for the 24.5 acres, and was able to plat the 12.5 acres that were Dr. Miller's tract. The surveyor used the deed from Harriet Bean and Albert Bean into Bernell Kerr. Dr. Miller bought from Bernell Kerr. The chain of title was deraigned perfectly.

The surveyor platted the Harriet Bean and Albert Bean 24.5 acres. This particular plat or map was duplicated into twelve or more copies and was passed individually to the members of the jury. These individual plats enabled the jurors to know exactly what each juror was deciding. The jury fully understood the real controversies and answered the jury questions accordingly. Thus, the jury knew and understood that the "land in controversy" was the 12.5 acres of land sued for by Miller. Furthermore, the whole of Miller's evidence was before them without any objections from the defendants that there was any defects in the pleadings. Defendants clearly failed to follow the mandatory requirements of TEX.R.CIV.P. 90. Then the surveyor was able to plat and locate Dr. Miller's tract. Dr. Miller's holdings and ownership was composed of two tracts, one for 12.5 acres and the other one for 3 acres. Miller acquired these two tracts in one deed. Both of Dr. Miller's tracts were numbered four on plaintiff's exhibit number eight. In this platting the surveyor used the actual deed from Harriet Bean and Albert Bean into Bernell Kerr who was the immediate grantor in the deed into Dr. Miller. In the platting, if the surveyor started at the southeast corner of the Harriet and Albert Bean 24.5 acre tract, then Dr. Miller's 12.5 acre tract fits perfectly into the plat and is reflected as tract four, there being two tracts four, the 12.5 acre tract is the southernmost tract four. The distances and courses are correct. And by the same token and the same reasoning and platting, the 11.5 acres from the Louisiana Pacific to Jill Reed and James Douglas, also fits perfectly into the plaintiff's exhibit number eight and is designated as tract five. The techniques and procedures used by DuBose were standard surveying practices, and they were accepted in the surveying industry. From the surveyor's research and platting his findings were beyond any question that the 12.5 acre tract is the most easterly tract in the 24.5 acre tract. Furthermore, the calls for the bearing trees cleared up the ambiguous call for the beginning point.

Upon cross-examination the surveyor demonstrated that beginning at the northeast corner of the Everette Rhodes tract and following a call in the deed to a *3–acre tract owned by Dr. A.A. Miller* that then proceeding south 30° east 150 varas *to the northeast corner of the Albert Bean 24.5 acre tract*, that these calls proved that the Miller 3 acre tract was adjacent to and joined the Harriet and Albert Bean 24.5 acre tract. The southeast corner of the 3 acre tract is exactly the northeast corner of the Bean 24.5 acre tract and also the northeast corner of the 12.5 acre Miller tract. Thus Miller's 12.5 acre tract *had* to be the easterly tract out of the Bean 24.5 acre tract.

Defendants' 11.5 acre tract necessarily *had* to be the westerly tract. Miller acquired the 3 acre tract and the 24.5 acre tract in the same deed from Bernell Kerr and Geraldine Kerr in June 1959 and Miller had occupied and possessed and cultivated timber on his 12.5 acres ever since that date—well over 25 years. From the plaintiff's exhibit number eight in evidence it is shown that the Miller 3–acre tract is contiguous to the Miller 12.5 acre tract, the south boundary line of the 3–acre tract coinciding with the north boundary line of the 12.5 acre tract. The cross-examination was crucially important because under adverse questioning, it was shown that one of the

later calls (in the Kerr to Miller deed) which called for varas to the place of beginning that this deed from Kerr to A.A. Miller conveyed 12.5 acres of land being out of and a part of the tract of land conveyed in a deed from Wilson Rhodes, et al, to Harriet Bean, et vir, dated October 8, 1925. And further that the above two tracts, that is, the 12.5 acre tract and the 3 acre tract owned by Dr. Miller were two tracts of land being also the same land described in the deed from Harriet Bean and husband to Bernell Kerr. This evidence made it abundantly and glaringly clear that Miller's 12.5 acre tract was located as he contended and was situated on the ground as the proof clearly and glaringly proved.

Thus, the trial court did not err in entering judgment in favor of the plaintiff Miller for damages, title and possession of the 12.5 acre tract as described by metes and bounds in the judgment. The evidence was certainly overwhelmingly in favor of the plaintiff.

■ The purpose of an action in trespass to try title is to recover land unlawfully withheld from the owner and to which the owner has the right of immediate possession. The plaintiff also pleaded that the acts of defendants in entering upon the plaintiff's land and cutting the timber thereon were willful, wanton and in total disregard of the rights of the plaintiff. The plaintiff pleaded for judgment against the defendants and for such other and further relief to which the plaintiff may show himself justly entitled, either at law or in equity. The trial court did not err in granting the judgment below.

The trial shall be conducted according to the rules of pleadings, practice and evidence as in other cases in district courts. Rule 795. The purpose of a trespass to try title action is to recover land and premises including timber when unlawfully withheld from owner and to which the owner has a right of immediate possession. *See Rocha v. Campos*, 574 S.W.2d 233 (Tex.Civ.App.—Corpus Christi 1978, no writ).

Miller has discharged an important requisite of affirmatively establishing his title to the property. *See Land v. Turner*, 377 S.W.2d 181 (Tex.1964). The record shows that Miller proved his title by a regular chain of conveyances from the sovereignty and by proving a superior title out of a common source and by proving title under various statutes of limitations and by proving prior possession. *Id.*

■ As a separate and distinct basis for Miller's recovery, the trial court was correct in entering judgment in favor of Miller as the record clearly reflects that the evidence was both legally sufficient and factually sufficient to sustain and support the jury answers to jury questions one, three, five, seven, nine and ten. These jury questions found in favor of Miller on the following grounds:

## QUESTION NO. 1

Do you find from a preponderance of the evidence that A.A. Miller, and his predecessors in title under whom he claims, has had and held peaceable and adverse possession of the tract of land in controversy, under title or color of title for any period of three (3) consecutive years after 1959 and prior to the filing of this suit on September 6, 1989?

Answer "Yes" or "No."

Answer: _yes_

## QUESTION NO. 3

Do you find from a preponderance of the evidence that A.A. Miller, and his predecessors in title under whom he claims, has had and held peaceable and adverse possession of the tract of land in controversy, cultivating, using or enjoying same and paying all taxes thereon before they became delinquent and under a deed duly registered, for any period of five (5) consecutive years after 1959 and prior to the filing of this suit on September 6, 1989?

Answer "Yes" or "No."

Answer: _yes_

## QUESTION NO. 5

Do you find from a preponderance of the evidence that A.A. Miller, and his predecessors in title under whom he

claims, has had and held peaceable and adverse possession of the tract of land in controversy, cultivating, using or enjoying the same for any period of ten (10) consecutive years after 1959 and prior to the filing of this suit on September 6, 1989?

Answer "Yes" or "No."

Answer: __yes__

### QUESTION NO. 7

Do you find from a preponderance of the evidence that A.A. Miller, and his predecessors in title under whom he claims, has had and held peaceable and adverse possession of the tract of land in controversy, cultivating, using or enjoying the same for any period of twenty-five (25) consecutive years after 1959 and prior to the filing of this suit on September 6, 1989?

Answer "Yes" or "No."

Answer: __yes__

### QUESTION NO. 9

What do you find from a preponderance of the evidence was the stumpage value of the timber cut from the land in controversy?

Answer in dollars and cents, if any.

Answer: __$10,000__

### QUESTION NO. 10

Do you find from a preponderance of the evidence that the cutting of the timber from the land in controversy was done by Defendants willfully, wantonly and with total disregard for the rights of A.A. Miller?

Answer "Yes" or "No."

Answer: __yes__

The defendants had requested an abstract of title, the same was filed with the court. The entire abstract of title was duly offered into evidence, it was admitted into evidence. No objection was made. The abstract of title is in evidence as plaintiff's exhibit number two. The Patent is in evidence from the Republic of Texas to Thomas Tanner dated February 5, 1842, being duly recorded in the Deed Records of Newton County.

The abstract of title and its contents are clearly sufficient to support the jury's findings and for the court's judgment under TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.024, 16.025 (Vernon 1986). The use of the 12.5 acres by Miller was utilized to the fullest extent that the said 12.5 acres could be used. The plaintiff had properly fenced the land; he maintained the fence lines and the fences; he cut brush and bushes along the fence lines; he painted the boundary lines; he cut timber from the property; he burned the underbrush; he called down any other person who even attempted to tie onto his fence; an impartial witness stated that in 1974 and afterwards one of his primary duties was to assist Miller in the management of the same 12.5 acres. This witness was an employee of Louisiana Pacific. Unquestionably, the record is replete with evidence of high probative valuation to sustain the jury's findings concerning the three-year statute of limitations, the five-year statute of limitations, the ten-year statute of limitations, and the twenty-five-year statute. The well-established rules for appellate review mandate that the judgment be affirmed. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

### *The Defendants' Failure to Object to the Charge*

■ The defendants made no objection to the charge of the court directed at any particular question posed to the jury. *The defendants did not object to any of the language or wording of any of the questions sent to the jury. The defendants did not object to any of the definitions in the court's charge.* The defendants did not proffer any definition that they desired to be placed in the court's charge. It cannot be disputed that *the land in controversy* was the 12.5 acres owned by A.A. Miller and adversely possessed by him for many, many years. In view of the lack of objections to the court's charge, the judgment of the court was correctly entered. The burden is on the appellants to show error and to show harmful error. They have failed.

Under the Rules of Appellate Procedure, rule 81(b)(1), governing civil cases, it is provided that no judgment shall be reversed on appeal on the ground that the trial court has committed an error unless it shall be shown that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. The judgment in this case is correct and proper.

Under the entirety of this record and under the charge of the court and considering the lack of objections and the lack of any tendered definitions or proper objections or substantially correct definitions; the defendants have failed to preserve error. The defendants have failed to show in the record that the action by the trial court was reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. In fact, the only proper judgment was entered in this case. The appellants have failed to discharge their burden under TEX.R.APP.P. 81(b)(1). The judgment must be affirmed.

Defendants wholly failed to object to voluminous evidence offered by Miller. Defendants failed to object that Miller's evidence was not supported by the pleadings. Any imagined defect in the pleadings was waived. TEX.R.CIV.P. 90.

Appellants concede in their brief that a description of the land is set out in Miller's abstract of title. The entire abstract of title was put into the record for all purposes without objection. Appellants place reliance upon TEX.R.CIV.P. 301, but fail to note that the judgment of the trial court shall also conform to the nature of the case proved and the verdict and *that the judgment shall be so framed as to give the party all the relief to which he may be entitled either in law or in equity. The word "shall" bears mandatory connotations.* Appellants overlook the fact that there is ample and indeed commanding, overwhelming evidence that the tract is located on the ground as Miller contends. Several witnesses swore to the controlling issue. Photographic evidence also exists.

From the abstract of title, the photographic evidence, and the verbal, uncontradicted testimony of witnesses, a description of the premises is made with certainty to identify the same land or premises so that possession thereof may be easily delivered. In fact, an in-court witness testified to this very fact.

Furthermore, there was uncontroverted evidence that the plaintiff was in possession of the premises and had been managing the premises and growing timber thereon for in excess of twenty-five years. Miller and several crucial witnesses knew where the 12.5 acre tract was located on the ground.

Of especial importance is Rule 783(f), (g). *Dr. A.A. Miller has proved that the profits and the damages he claimed are his, and he has proved such facts as to show him to be entitled to those profits and damages and the amounts thereof.* The verdict of the jury reaffirms Dr. Miller's position and contentions. Dr. Miller concluded his pleadings with a proper prayer for the relief he sought. After the answer was filed, the appellants demanded an abstract in writing of the claim or title to the premises in question. Dr. Miller complied fully with TEX.R.CIV.P. 791. Defendants were given full notice of the claim in question. The abstract of title was timely filed. TEX.R.CIV.P. 792. And it fully complied with TEX.R.CIV.P. 793.

Furthermore, upon the findings and the favorable answers made by the jury for the land and especially for the timber, the *judgment shall be* that the plaintiff shall recover of the defendants the title and possession of such premises describing the premises. TEX.R.CIV.P. 804. The judgment below complies assiduously with Rule 804. Furthermore, if there are special injuries or damages to the property, then the damages for such injury shall be assessed and the proper judgment shall be entered thereon for which execution may issue. TEX. R.CIV.P. 805. Thus, the trial court entered the correct judgment in this case, adhering to the governing Rules of Procedure.

The appellants base several points of error on the contention that the description

of the "land in controversy"—being the real property in question—is incorrect in the judgment. Appellants aver the pleadings are at variance with the judgment. *However, the "land in controversy" is the 12.5 acres of land sued for.* The court so charged. Their contentions and arguments then become either insupportable or unsustainable. The appellants made no objection to this part of the court's charge. Defendants failed to object that the "land in controversy" is the "12.5 acres of land sued for." Hence, the jury followed the charge and the evidence. Defendants failed to complain that the 12.5 acres were not defined using the field notes and waiver resulted. TEX.R.CIV.P. 272, 273, 274. Rule 90 had been previously waived. They failed to adhere to TEX.R.CIV.P. 795 which provides that the trial shall be conducted according to the rules in other cases in district court. Appellants have failed to require the trial court to define the "land in controversy" by defining it by metes and bounds. Again, from the abstract of title and the entirety of the record in this case, both the judge and the jury knew with certainty the actual 12.5 acres of land that was sued for and the timber thereon. If at the end of the trial (in view of the entirety of the record that was before the jury) if the appellants desired to have the "land in controversy" defined differently, they had to object properly. If the defendants wanted the "land in controversy" to be determined by the metes and bounds description, they had to tell the trial court. The appellants had to object to the "land in controversy" with reasonable specificity and all such objections that were not presented to the court were waived. Rule 272. Appellants failed to comply with Rule 272. Furthermore, appellants failed to comply with Rule 273. If the appellants were not satisfied with the court's charge on this point of "land in controversy" they were under a duty to present to the court and request written definitions and/or written instructions to be given to the jury. This they failed to do. Rule 274 provides that a party objecting to a charge must point out distinctly and with specificity the objectionable matter and the grounds of the objec-

tion. Again, defendants failed. Litigants cannot try cases by ambush—even unintended ambush.

But of paramount controlling importance is the failure of appellants to heed Rule 274. Rule 274 requires: "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." No such complaint or objection was made to the trial judge's charge on "land in controversy". The able trial judge submitted the questions and the charge to the jury properly. TEX.R.CIV.P. 277. Appellants failure to comply with Rule 272, 273 and especially the crucial and paramount controlling provision in 274, makes appellants' points of error number one, two, three, and four unsustainable on appeal.

### The Common Source of Title Issue

Appellants concede that there was a partition of land among several heirs of a deceased ancestor. It is clear that this ancestor was a common source of title. Appellants concede that a 12.5 acre tract was sold to one Bernell Kerr and had its first call in the southeast corner of the Powell tract. This place of beginning was the same place of beginning as that of the Bean 24.5 acre tract and the Kerr tract was a part of the Bean 24.5 acre tract.

Furthermore, the bearing trees which witnessed the corners of Miller's 12.5 acre tract are not challenged. When Miller first went upon the land he purchased, the correct corners were pointed out to him and he knew where his land was actually situated on the ground. And it is this very tract of ground that the record shows (and the jury found) that he perfected his title under the several statutes of limitations.

### The Issue of the Correctness and Sufficiency of Miller's Deed and Pleadings

It is also very significant that Miller's deed and his pleadings make this call:

THENCE South 30 East 196.8 varas to place of beginning, containing 12½ acres of land, more or less. *Being out of and*

*a part of the second tract of land conveyed in a deed from Wilson Rhodes, et al. to Harriet Bean, et vir., dated October 8, 1925, and recorded in Volume 47, page 628, Deed Records of Newton County, Texas.*

*The above two tracts of land being also the same land described in a deed from Harriet Bean, et al, to Bernell Kerr, dated the 28th day of February, 1959, recorded in Volume 152, page 263, Deed Records of Newton County, Texas.* (emphasis added)

These pleaded recitations clearly identify with specificity the tract that was bought and purchased and possessed by Dr. Miller. There is no meaningful variance and the judgment comports therewith. The defendants knew that Miller's 12.5 acres was a part of the Harriet and Albert Bean 24.5 acre tract and was the Kerr 12.5 acre tract. The judge and the jury from the evidence, testimony, and exhibits before them correctly perceived the land in controversy. Miller's pleadings were sufficient. Rule 90 was not followed, thus resulting in waiver of any defects in the pleadings as to form or substance. Under the reasoning set out above, appellants' points of error one, two, three, and four are overruled.

### The Attorney's Fees Question

■ The trial court was correct in awarding the attorney's fees in this case. The plaintiff's cause of action clearly sounded in trespass to try title. Miller claimed not only the fee simple title but he also claimed title by adverse possession under §§ 16.024, 16.025, 16.026, and 16.027, TEX.CIV.PRAC. & REM.CODE ANN. Hence, under TEX.CIV.PRAC. & REM.CODE ANN. § 16.034 the plaintiff was entitled to ask for and receive attorney's fees if he prevailed. The defendants on the other hand answered by a plea of "not guilty", and also denied that any timber had been harvested from the land. The plaintiff by proper pleadings also placed in issue TEX.R.CIV.P. 54. Rule 54 specifically provides that it shall be sufficient and adequate to plead generally and set forth that all conditions precedent have been performed or have occurred. The same rule provides that when such perfor-

mances or occurrences have been so pleaded then that litigant shall be required to prove only such of them *as are specifically denied by the opposing parties.* The defendants simply failed to specifically deny that the conditions precedent had not been met. By reading sections 16.024, 16.025, 16.026, and 16.027 with section 16.034 harmoniously and in unison with TEX.R.CIV.P. 54, the trial judge was correct in awarding the attorney's fees as set out in the judgment. Appellants' point of error five is overruled.

The judgment below is affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority, in their zeal to maintain "[T]he purity and efficiency of the right of trial by jury," simply misses the point.

Miller filed an action in trespass to try title and sought damages for the timber. He did not assert an action to reform his deed. His pleadings included a legal description of the property, to which he claimed both record title and title by adverse possession. At trial, Miller contended that his deed recited an incorrect beginning point. He claimed that the only way to reconcile all of the conveyances out of the common grantor was to move the beginning point from the southeast corner of the Allie and James Powell tract, as recited in the deed, to the southeast corner of the Harriet and Albert Bean tract, as awarded on the judgment. This would place Miller on the eastern part of the "Bean tract," where the timber was cut. Appellants argued that two parallel calls were reversed in error and could be reconciled by reversing those calls so that the Miller deed fit into the western part of the Bean tract, where no timber was cut.

The jury charge refers to "the land in controversy" as "the 12.5 acres sued for" and does not set forth a property description. The judgment awarding title to Miller describes the eastern part of the Bean tract. On appeal, Miller argues that it was within the trial court's power to reform the

deed to correct the metes and bounds description. I disagree. Miller and the majority consistently refer to the "the subject property", but ignore the fact that "the subject property" is described in his pleadings *only* with a point of beginning in the southeast corner of the Powell tract, and never as a tract beginning at the southeast corner of the Bean tract.

The petition in a trespass to try title case must contain a "description of the premises by metes and bounds, or with sufficient certainty to identify the same, so that from such description possession thereof may be delivered...." Tex.R.Civ.P. 783(b). This is an absolute requirement; the trial court lacks jurisdiction to enter judgment to title to land in the absence of a pleading placing the property in controversy. *Gilbreath v. Yarbrough,* 472 S.W.2d 185 (Tex.Civ. App.—Tyler 1971, writ ref'd n.r.e.); *Holasek v. Janek,* 244 S.W. 285 (Tex.Civ.App.— Dallas 1922, no writ). *See also, Butler v. Hanson,* 455 S.W.2d 942 (Tex.1970). Miller's petition set forth a single property description, which was identical to the description contained the deed under which Miller claimed record title. All of the alternative adverse possession allegations referred back to this description. Miller never alleged the description in the deed contained an ambiguous description, nor did he seek to reform the deed to correct the description. The judgment does not describe the same property as Miller's pleadings and therefore awards title to property not in controversy. This is error.

This is an action in trespass to try title, seeking possession of real property; to prevail Miller must plead and prove that the land can be located in order to show his interest in it. *Valadez v. Barrera,* 647 S.W.2d 377 (Tex.App.—San Antonio 1983, no writ). Miller's own position is the description contained in both the deed and his petition is ambiguous. But obviously an ambiguous description cannot supply the notice required by Rule 783. Furthermore, the judgment must conform to the pleadings. Tex.R.Civ.P. 301. Miller has no pleadings to support an action to reform the deed, nor did he amend his pleadings to alter the description of the property in controversy to conform with the description of the property he sought judgment upon. Since Miller failed to establish title to the property in his petition, he is not entitled to damages for deforestation of an unlitigated tract, and the award of damages was also in error.

I would sustain points of error one, two and three, thus not reaching the remaining points of error, and reverse the judgment of the trial court and render judgment that A.A. Miller take nothing of his suit.